## MICHAEL COPPOLA *v.* LOGISTEC CONNECTICUT, INC., ET AL.
### (SC 17604)

Borden, Norcott, Katz, Palmer, Vertefeuille, Zarella and Sullivan, Js.

Argued October 24, 2006—officially released July 3, 2007

*David A. Kelly*, with whom, on the brief, was *Marie E. Gallo-Hall*, for the appellant (plaintiff).

*Peter D. Quay*, for the appellee (named defendant).

*Opinion*

SULLIVAN, J. The plaintiff, Michael Coppola, appeals[1] from the decision of the compensation review board (board) affirming the decision of the workers' compensation commissioner for the third district (commissioner) dismissing for lack of jurisdiction the plaintiff's claim pursuant to the Workers' Compensation Act (state act), General Statutes § 31-275 et seq. The plaintiff claims on appeal that the board improperly concluded that the commissioner lacked jurisdiction over his claim against the named defendant, Logistec Connecticut, Inc.,[2] because the injury occurred on the navigable waters of the United States and, therefore, the federal government had exclusive jurisdiction over the claim

[1] The plaintiff appealed from the judgment of the compensation review board to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] LaMorte Burns and Company, the third party administrator of the workers' compensation plan for Logistec Connecticut, Inc., was also a defendant in the proceedings before the commission and the board. LaMorte Burns and Company has not participated in this appeal. For convenience, we refer to Logistec Connecticut, Inc., as the defendant in this opinion.

under article three, § 2, and article one, § 8, of the consti-
tution of the United States[3] and the Longshore and
Harbor Workers' Compensation Act, 33 U.S.C. § 901 et
seq. (longshore act). We agree with the plaintiff and
reverse the board's decision.

The record reveals the following facts and procedural
history. The plaintiff testified at a hearing before the
commissioner that the defendant is in the business of
unloading ships in New Haven harbor. The plaintiff had
worked as a laborer for the defendant and its predeces-
sors intermittently over several years. He resumed
working for the defendant on June 14, 1999. On that
date, he was assigned to work on the docks
"unhooking" cargo. On the next day, June 15, 1999, he
was assigned to unload copper from the hold of a ship.
As the plaintiff was descending into the ship's hold, a
step broke beneath him and he fell. He was taken by
ambulance to Yale-New Haven Hospital, where he was
treated for a broken hip and a broken wrist.

The plaintiff filed a claim under the longshore act
and was awarded compensation in a decision dated
April 28, 2003. The plaintiff also filed a claim under the
state act. On September 15, 2003, the defendant filed a
motion to dismiss the state claim for lack of jurisdiction
claiming that, because, at the time of his injury, the
plaintiff had been engaged in maritime employment in
a vessel floating on the navigable waters of the United
States, the longshore act was his exclusive remedy. The
commissioner found that the plaintiff "was employed by

[3] The constitution of the United States, article three, § 2, provides in
relevant part: "The judicial Power [of the United States] shall extend . . .
to all Cases of admiralty and maritime Jurisdiction . . . ."

The constitution of the United States, article one, § 8, provides in relevant
part: "The Congress shall have Power . . . [t]o make all Laws which shall
be necessary and proper for carrying into Execution the foregoing Powers,
and all other Powers vested by this Constitution in the Government of the
United States, or in any Department or Officer thereof."

[the defendant] on June 15, 1999, when he was seriously injured as a result of a fall in the hold of a ship, docked in New Haven and floating on navigable waters of the United States . . . ." He also found that the plaintiff "has an accepted claim for these injuries under the provisions of the [longshore act] for which he is receiving benefits." Relying on this court's decision in *Leszczymski* v. *Andrew Radel Oyster Co.*, 102 Conn. 511, 527–28, 129 A. 539 (1925), in which this court held that, under *Southern Pacific Co.* v. *Jensen*, 244 U.S. 205, 37 S. Ct. 524, 61 L. Ed. 1086 (1917), the federal government had exclusive jurisdiction over maritime injuries occurring on navigable waters, the commissioner dismissed the claim for lack of subject matter jurisdiction.

The plaintiff then filed a motion to correct the commissioner's findings, in which he requested new findings that, inter alia, the plaintiff is a Connecticut resident, the defendant is a Connecticut corporation, the employment contract was entered into within this state and the place of the injury was New Haven. He also argued that the commissioner and the federal government had concurrent jurisdiction over the claim. The defendant objected to the motion on the ground that the proposed findings were merely restatements of the plaintiff's arguments, and that "[t]he situs of the accident was on a vessel floating in the water and that has already been made clear in the record." The commissioner denied the plaintiff's motion.

The plaintiff appealed from the commissioner's dismissal of his claim to the board. He also filed a motion for summary remand in which he requested that the board remand the matter to the commissioner for additional findings. The defendant objected to the motion on the ground that "the only relevant fact is whether the injury occurred in the hold of the vessel, which was floating on the navigable waters of the United States . . . ." After a hearing, the board issued its decision

affirming the commissioner's dismissal of the claim. The board noted that this court's decision in *Leszczymski* had been rendered before the enactment of the longshore act and that later developments in the case law suggested that the rigid rule set forth in *Jensen* may have been modified so that state compensation laws constitutionally could be applied to some claims involving injuries occurring on navigable waters. The board concluded, however, that "[t]he effect of [the longshore act] and federal case law are interpretive matters within the province of our higher appellate courts," and that it was bound by *Leszczymski* until that case is overruled. The board did not rule on the plaintiff's motion for summary remand. This appeal followed.

The plaintiff claims on appeal that the board improperly: (1) determined that the state did not have jurisdiction over his claim; and (2) failed to address his motion for summary remand and the commissioner's denial of his motion to correct. We conclude that the state has concurrent jurisdiction with the federal government over claims involving injuries incurred on navigable waters when the employer and the employee are locally based, the employment contract is performed within the state and partly on land, the injury took place on the state's territorial waters and the employer was required under the state act to secure compensation for any land based injuries incurred by the employee. We further conclude that, because the defendant concedes that the plaintiff's claim would not be barred if he had been injured on land, the record is sufficient for this court to determine that the state act constitutionally applies to the claim and there is no need to remand the matter to the commissioner for additional fact-finding. Accordingly, we reverse the board's decision.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals.

The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny." (Citations omitted; internal quotation marks omitted.) *Tracy* v. *Scherwitzky Gutter Co.*, 279 Conn. 265, 272, 901 A.2d 1176 (2006). Whether the state act constitutionally applies to claims involving injuries that occurred on the navigable waters of the United States is a pure question of law.[4] In *Leszczymski* v. *Andrew Radel Oyster Co.*, supra, 102 Conn. 527–28, this court addressed that question and concluded that the commissioner had no jurisdiction over maritime claims. As the board recognized, however, we have never reconsidered the question in light of the many important developments in federal statutory and case law that have taken place since that decision. Accordingly, we conclude that our review of this issue is plenary.

---

[4] The plaintiff frames the issue in this case as a question of federal preemption. Typically, federal preemption claims arise under the supremacy clause of the federal constitution when the "state law at issue conflicts with federal law, either because it is impossible to comply with both . . . or . . . the state law stands as an obstacle to the accomplishment and execution of congressional objectives." (Internal quotation marks omitted.) *Barbieri* v. *United Technologies Corp.*, 255 Conn. 708, 717, 771 A.2d 915 (2001). The jurisdictional question before us in the present case does not involve a conflict between state and federal legislation, however, but instead involves the scope of exclusive federal jurisdiction over maritime matters under article three, § 2, and article one, § 8, of the federal constitution. See *Southern Pacific Co.* v. *Jensen*, supra, 244 U.S. 214–16.

We begin our analysis by reviewing the development of the law governing state and federal jurisdiction over workers' compensation claims involving maritime employment. In *Southern Pacific Co.* v. *Jensen,* supra, 244 U.S. 210, the United States Supreme Court considered a claim that the New York workers' compensation law was unconstitutional as applied to provide benefits to the widow of a longshoreman who had been killed while unloading cargo on a ship floating in navigable waters. The longshoreman had been employed at the New York office of the plaintiff, a Kentucky corporation, which also owned the ship on which he had been killed. Id., 207. The court began by noting that "Article III, § 2, of the Constitution, extends the judicial power of the United States 'To all cases of admiralty and maritime jurisdiction;' and Article I, § 8, confers upon the Congress power 'To make all laws which may be necessary and proper for carrying into execution the foregoing powers and all other powers vested by this [c]onstitution in the government of the United States or in any department or officer thereof.' " Id., 214–15. The court then recognized that, "[i]n view of these constitutional provisions . . . it would be difficult, if not impossible, to define with exactness just how far the general maritime law may be changed, modified, or affected by state legislation. That this may be done to some extent cannot be denied." Id., 216. "[N]o such legislation is valid [however] if it . . . works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." Id.

The court in *Jensen* found that "[t]he work of a stevedore in which the deceased was engaging is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty

jurisdiction." Id., 217. The court stated that, "[i]f New York can subject foreign ships coming into her ports to such obligations as those imposed by her Compensation Statute, other States may do likewise. The necessary consequence would be destruction of the very uniformity in respect to maritime matters which the Constitution was designed to establish; and freedom of navigation between the States and with foreign countries would be seriously hampered and impeded." Id. The court concluded that "[t]he legislature exceeded its authority in attempting to extend the statute under consideration to conditions like those here disclosed. So applied, it conflicts with the Constitution and to that extent is invalid."[5] Id., 217–18.

At the time of the *Jensen* decision, there was no federal law providing for compensation of injured waterfront workers. Concerned that *Jensen* would deprive injured workers of their sole source of compensation, Congress made two efforts to enact laws providing that state compensation would be available to them. See *Davis* v. *Dept. of Labor*, 317 U.S. 249, 252, 63 S. Ct. 225, 87 L. Ed. 246 (1942). Both enactments were found to be unconstitutional. Id. Finally, in 1927, Congress "responded to *Jensen* and its progeny by extending federal protection to shore-based workers injured while temporarily on navigable waters. The statute excluded . . . seamen,[6] on the one hand, and shore-based work-

---

[5] As this court stated in *Leszczymski* v. *Andrew Radel Oyster Co.*, supra, 102 Conn. 518–19, "Mr. Justice Holmes and Mr. Justice Pitney, controvert the grounds of [the *Jensen*] decision in opinions of exceptional ability, leaving little else to be said by way of argument or judicial research or analysis." Justice Brandeis and Justice Clark joined in both dissenting opinions. The primary argument of the dissenting justices was that "the language of § 2 of [article] III of the Constitution speaks only of establishing jurisdiction, and does not prescribe the mode in which or the substantive law by which the exercise of that jurisdiction is to be governed . . . ." *Southern Pacific Co.* v. *Jensen*, supra, 244 U.S. 227 (Pitney, J., dissenting).

[6] Seamen are protected under the Jones Act, 46 U.S.C. § 688 et seq.

ers while they were on the landward side of the *Jensen* line, on the other. . . . [T]he [longshore act] was originally a 'gap-filling' measure intended to create coverage for those workers for whom, after *Jensen*, States could not provide compensation." *Chandris, Inc.* v. *Latsis*, 515 U.S. 347, 387, 115 S. Ct. 2172, 132 L. Ed. 2d 314 (1995). The law was applicable only " 'if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by state law.' " *Davis* v. *Dept. of Labor*, supra, 253.

While Congress was attempting to address the gap in coverage for waterfront injuries created by *Jensen*, the United States Supreme Court had concluded that not all claims involving injuries that occurred on navigable waters were beyond the reach of state compensation laws. In *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U.S. 469, 473–75, 42 S. Ct. 157, 66 L. Ed. 321 (1922), the court considered whether Oregon's compensation laws constitutionally applied to a claim by an employee who had been injured while constructing a new ship floating in navigable waters. The court stated that "[t]he contract for constructing [the new ship] was non-maritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither [the employee's] general employment, nor his activities at the time had any direct relation to navigation or commerce." Id., 475–76. Moreover, "the parties contracted with reference to the state statute [and] their rights and liabilities had no direct relation to navigation . . . ." Id., 477. The court concluded that, when state regulation "would work no material prejudice to the general maritime law, the rules of the latter might be modified or supplemented by state statutes." Id. Accordingly, it concluded that the application of the state compensation law was constitutional under these circumstances. Id., 477–78. The principle that states have jurisdiction over claims involving injuries that

occurred on navigable waters if the employee's activities and the employment contract were not directly related to navigation or maritime commerce is sometimes referred to as the "maritime but local doctrine." See *Director, Office of Workers' Compensation Programs* v. *Perini North River Associates*, 459 U.S. 297, 306, 103 S. Ct. 634, 74 L. Ed. 2d 465 (1983).

Thereafter, consistent with *Rohde*, the court continued to apply *Jensen* to bar state jurisdiction over compensation claims when it found that an employee's work had a direct relation to navigation or commerce. In *John Baizley Iron Works* v. *Span*, 281 U.S. 222, 230, 50 S. Ct. 306, 74 L. Ed. 819 (1930), the court considered the constitutionality of Pennsylvania's compensation law as applied to a claim by an employee who had been injured while engaged in repair work on a ship floating in navigable waters. Relying on *Rohde*, the employee had claimed that application of the state statute "would work no material prejudice to the essential features of the general maritime law . . . ." Id. The court rejected this claim, reasoning that, unlike work on a new ship that was "not yet placed into navigation and which had not become an instrumentality of commerce"; id., 231; "[r]epairing a completed ship lying in navigable waters has direct and intimate connection with navigation and commerce . . . ." Id., 232. Accordingly, the court held that the application of the state statute was unconstitutional.[7] Id. Thus, after *John Baizley Iron Works*, mari-

---

[7] Justice Stone authored a dissenting opinion, in which Justices Holmes and Brandeis concurred, in which he contended that the case was governed by *Rohde* and *Rosengrant* v. *Havard*, 273 U.S. 664, 47 S. Ct. 454, 71 L. Ed. 829 (1927). *John Baizley Iron Works* v. *Span*, supra, 281 U.S. 232 (Stone, J., dissenting). In *Rosengrant*, the court had affirmed the judgment of the Supreme Court of Alabama that the state had jurisdiction over the claim of an employee of a lumber manufacturer who had been injured while temporarily on board a schooner floating in navigable waters, where he had been checking a lumber shipment. See *John Baizley Iron Works* v. *Span*, supra, 232.

time compensation claims appeared to fall into two categories: those in which the employee's work at the time of injury had no direct relation to navigation and commerce, over which states had exclusive jurisdiction; and those in which the employee's work had a direct relation to navigation and commerce, over which the federal government had exclusive jurisdiction under *Jensen.*

In *Parker* v. *Motor Boat Sales, Inc.*, 314 U.S. 244, 245, 62 S. Ct. 221, 86 L. Ed. 184 (1941), the court considered whether the longshore act applied to a claim by the widow of an employee who had drowned when he fell from a motor boat while testing one of his employer's outboard motors for a prospective purchaser. The United States Circuit Court of Appeals for the Fourth Circuit had concluded that the longshore act did not apply because the employee's employment "was 'so local in character' that Virginia could validly have included it under a state workmen's compensation [a]ct." Id., 246. The United States Supreme Court rejected the finding that the employment fell within the maritime but local doctrine, concluding that the claim was made "in connection with [a] clearly maritime activity . . . ." Id., 247. The court recognized that, under *Jensen*, the state was precluded from exercising jurisdiction over such a claim. Id., 247–48. It further recognized that the *Jensen* rule was highly controversial and implicitly questioned its continued vitality. Id., 248. The court concluded, however, that there was no need to reconsider the constitutional rule because, as a matter of statutory interpretation, the longshore act applied to all claims by "employees engaged 'in maritime employment, in whole or in part, upon the navigable waters of the United States' "; id., 248–49; regardless of whether states constitutionally were barred from exercising jurisdiction over such claims. The court reasoned that "[t]he main impetus for the [longshore act] was the

need to correct a gap made plain by decisions of this Court. We believe that there is only one interpretation of the proviso [limiting the longshore act to claims in which 'recovery for the disability or death through workmen's compensation proceedings may not validly be provided by state law'] which would accord with the aim of Congress;[8] the field in which a state may not validly provide for compensation must be taken, for the purposes of the [longshore act], as the same field which the *Jensen* line of decision excluded from state compensation laws. Without affirming or rejecting the *constitutional* implications of those cases, we accept them as the measure by which Congress intended to mark the scope of the [longshore act] they brought into existence." (Emphasis in original.) Id., 250. Thus, after *Parker*, claims involving maritime injuries still fell into two categories: those falling within the maritime but local doctrine, over which states had exclusive jurisdiction, and those having a direct relation to navigation and commerce, over which the federal government had jurisdiction, regardless of whether the states constitutionally could exercise concurrent jurisdiction over the claims.

The next major development in the law governing maritime workers' compensation claims came in *Davis* v. *Dept. of Labor*, supra, 317 U.S. 249. In that case, the United States Supreme Court considered whether the state of Washington had jurisdiction over a claim by the widow of an employee who had drowned when he fell from a barge located in a navigable river. Id., 251. The employee had been engaged in dismantling an abandoned drawbridge at the time of his death. Id. The

---

[8] The court also stated that "[a]n interpretation which would enlarge or contract the effect of the proviso in accordance with whether this Court rejected or reaffirmed the constitutional basis of . . . *Jensen* and its companion cases cannot be acceptable. The result of such an interpretation would be to subject the scope of protection that Congress wished to provide, to uncertainties that Congress wished to avoid." *Parker* v. *Motor Boat Sales, Inc.*, supra, 314 U.S. 250.

Washington Supreme Court had concluded that the state constitutionally could not exercise jurisdiction over the claim. Id., 250–51. On appeal, the United States Supreme Court noted that "a number of cases can be cited both in behalf of and in opposition to recovery here"; id., 253; and that "[t]he very closeness of the cases . . . and others raising related points of interpretation, has caused much serious confusion." Id., 254. This confusion caused difficulties both for employees, who could not be sure which sovereign had jurisdiction over their claims and risked losing any compensation at all if the statute of limitations expired before they could bring the claim in the proper forum, and for employers, who could lose the protection of the insurance that they had procured and be subject to sanctions if they failed to secure compensation for the employee under the proper law. Id., 254–55. Overruling *Jensen* would not cure the problem because, as the court had held in *Parker*, the longshore act had codified *Jensen's* jurisdictional rule.[9] Id., 256.

---

[9] The dissent suggests that the court's statement in *Davis* that overruling *Jensen* would not solve the jurisdictional problem establishes that the court "had accepted the *Jensen* line of demarcation between state and federal jurisdiction." (Internal quotation marks omitted.) It must be remembered, however, that, at the time that *Davis* was decided, the court had not yet recognized that, as a matter of statutory construction, there were cases in which jurisdiction under the longshore act and under the state act would coexist. Thus, the court merely was acknowledging that, even if it overruled *Jensen*, it still would be required to determine the congressional understanding of the *Jensen* rule at the time that the longshore act was enacted in order to determine whether a state had jurisdiction. As we discuss more fully in the text of this opinion, the holding in *Davis* was that, on identical facts, one court could find exclusive federal jurisdiction under *Jensen*, another court could find state jurisdiction, and both rulings properly could be affirmed by a reviewing court. This hardly constitutes a ringing endorsement of the rigid *Jensen* rule.

We note that cases defining the scope of the longshore act and the overlap of that act with state acts are somewhat controversial and confusing. It appears to us that the court in *Davis* assumed that federal and state jurisdiction were mutually exclusive. See *Hahn* v. *Ross Island Sand & Gravel Co.*, 358 U.S. 272, 273–75, 79 S. Ct. 266, 3 L. Ed. 2d 292 (1959) (Stewart, J., dissenting) (under *Davis*, court's finding of jurisdiction under longshore act

The court concluded that "[t]here is . . . clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act." Id. "Faced with this factual problem we must give great—indeed, presumptive— weight to the conclusions of the appropriate federal authorities and to the state statutes themselves." Id. If federal authorities determined that the claim fell within the scope of the longshore act, the conclusion would be "entitled to great weight and will be rejected only in cases of apparent error." Id., 257. If, on the other hand, the employee first made a claim under state law, the constitutionality of the state compensation law as applied to the claim was to be presumed.[10] Id. Giving

should preclude jurisdiction under state act); see also *Calbeck* v. *Travelers Ins. Co.*, 370 U.S. 114, 137, 82 S. Ct. 1196, 8 L. Ed. 2d 368 (1962) (Stewart, J., dissenting) (if *Davis* had recognized concurrent jurisdiction, then there would have been no need for twilight zone doctrine). The United States Supreme Court ultimately concluded, however, that *Davis* had established a regime of concurrent jurisdiction in the twilight zone. See *Hahn* v. *Ross Island Sand & Gravel Co.*, supra, 272–73 (majority opinion); see also *Sun Ship, Inc.* v. *Pennsylvania*, 447 U.S. 715, 718, 100 S. Ct. 2432, 65 L. Ed. 2d 458 (1980). Similarly, although, by its own terms, the longshore act originally did not apply "if recovery . . . may . . . validly be provided by State law"; (internal quotation marks omitted) *Calbeck* v. *Travelers Ins. Co.*, supra, 137–38 (Stewart, J., dissenting), citing *Hahn* v. *Ross Island Sand & Gravel Co.*, supra, 272; the United States Supreme Court ultimately held that it applied to claims falling within the maritime but local doctrine. See *Calbeck* v. *Travelers Ins. Co.*, supra, 126–28. As we discuss in the body of this opinion, because the scope of the longshore act does not negatively define the scope of state jurisdiction under the constitution, we need not address these controversies and apparent contradictions at length. Nevertheless, it is important to note that the development of this law reflects a growing sensitivity to practical concerns, such as ease of administration and certainty of coverage, and a diminishing concern with preserving purely formalistic rules.

[10] The *Davis* doctrine has been referred to as the " 'first come, first served' rule." Board of Trustees of the Leland Stanford Junior University, "Has the *Jensen* Case Been Jettisoned?" 2 Stan. L. Rev. 536, 540 (1950). "Two presumptions were used as the basis of the rule. If the twilight zone worker first presented his claim under the [longshore act], the award could be

the full weight of this presumption of constitutionality to Washington's compensation law, the court reversed the judgment of the Washington Supreme Court that the state was constitutionally barred from exercising jurisdiction over the claim. Id., 258. Thus, after *Davis*, there appeared to be three categories of maritime claims: those that traditionally had fallen within the maritime but local doctrine, over which states had exclusive jurisdiction; those that traditionally had been found to have a direct affect on navigation or commerce, over which the federal government had exclusive jurisdiction; and those close cases falling within the twilight zone, over which the forum in which the employee first brought the claim was presumed to have jurisdiction.

This interpretation of *Davis*' twilight zone doctrine was soon to be thrown into doubt, however. In *Moores's Case*, 323 Mass. 162, 164, 80 N.E.2d 478 (1948), the Massachusetts Supreme Judicial Court considered whether Massachusetts had jurisdiction over the claim of an employee who had been injured while repairing a ship "in a dry dock floating in navigable water . . . ." The court noted that, traditionally, repair work on a ship floating on navigable waters had been a quintessentially maritime activity that fell within the exclusive jurisdiction of the federal government.[11] Id., 165. It concluded, however, that the principles underlying that rule were "definitely altered" by the United States Supreme

upheld by reason of the provision in the [longshore act] that jurisdiction is to be 'presumed, in the absence of substantial evidence to the contrary.' On the other hand, if the claim were made under the state act, the traditional presumption of constitutionality would be invoked to sustain jurisdiction. In other words, the marginal claimant was certain to be right no matter which forum he chose." Id.

[11] "Of all the categories of borderline employment, the one which [before *Moores's Case*] had been most authoritatively, repeatedly and decisively placed on the federal side was repair work on a previously complete vessel . . . ." 9 A. Larson & L. Larson, Workers' Compensation Law (2006) § 145.02 [6], p. 145-11.

Court's decision in *Davis*. Id., 166. Although the Massachusetts court concluded that *Davis* had not overruled *Jensen*, and that "apparently some heed must still be paid to the line between State and Federal authority as laid down [in *Jensen*]"; id., 167; "the most important question has now become the fixing of the boundaries of the new 'twilight zone,' and for this the case gives us no rule or test other than the indefinable and subjective test of doubt. Mr. Justice Frankfurter says that 'Theoretic illogic is inevitable so long as the employee . . . is permitted to recover' at his choice under either act. [*Davis* v. *Dept. of Labor*, supra, 317 U.S. 259 (Frankfurter, J., concurring)]. Probably therefore our proper course is not to attempt to reason the matter through and to reconcile previous authorities, or to preserve fine lines of distinction, but rather simply to recognize the futility of attempting to reason logically about 'illogic,' and to treat the *Davis* case as intended to be a revolutionary decision deemed necessary to escape an intolerable situation and as designed to include within a wide circle of doubt all water front cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other. We can see no other manner in which the *Davis* case can be given the effect that we must suppose the court intended it should have, and we must assume that the court intends to follow that case in the future." *Moores's Case*, supra, 167. The court concluded that Massachusetts had jurisdiction over the claim. Id., 168.

Thereafter, *Moores's Case* was appealed to the United States Supreme Court. In a development that stunned some observers; see Board of Trustees of the Leland Stanford Junior University, "Has the *Jensen* Case Been

Jettisoned?" 2 Stan. L. Rev. 536, 543 (1950);[12] the United States Supreme Court affirmed *Moores's Case* in a per curiam memorandum decision. See *Bethlehem Steel Co. v. Moores*, 335 U.S. 874, 69 S. Ct. 239, 93 L. Ed. 417 (1948).

Any doubt that the United States Supreme Court had failed to appreciate that *Moores's Case* had effected a "sweeping change in workmen's compensation law"; Board of Trustees of the Leland Stanford Junior University, supra, 2 Stan. L. Rev. 543; was removed the next year when the court, in another per curiam decision, vacated the decision of the California Court of Appeal that California lacked jurisdiction over a claim that was factually indistinguishable from the Massachusetts case and remanded the case to the California court for reconsideration in light of its decision in *Moores's Case*.[13] See *Baskin* v. *Industrial Accident Commission*, 89 Cal. App. 2d 632, 201 P.2d 549, vacated, 338 U.S. 854, 70 S. Ct. 99, 94 L. Ed. 523 (1949) (per curiam). "The *Baskin* case is, if anything, more striking than [*Moores's Case*], since in [*Moores's Case*], the court merely declined to

_____

[12] See also D. Collins, note, "Admiralty—*Beverly* v. *Action Marine Services, Inc.*: Twilight or Total Eclipse?" 58 Tul. L. Rev. 1237, 1241 (1984) ("[t]he *Moores's* decision was such an unusual interpretation that it probably would have had very little precedential authority outside of Massachusetts if no further action had been taken").

[13] The California Court of Appeal initially had affirmed the decision of the workers' compensation commission dismissing the plaintiff's claim for benefits. *Baskin* v. *Industrial Accident Commission*, 89 Cal. App. 2d 632, 638, 201 P.2d 549, vacated, 338 U.S. 854, 70 S. Ct. 99, 94 L. Ed. 523 (1949) (per curiam). On remand, the California Court of Appeal reversed itself and concluded that the state had jurisdiction over the claim. *Baskin* v. *Industrial Accident Commission*, 97 Cal. App. 2d 257, 264, 217 P.2d 733 (1950). The court stated that "[t]he Massachusetts court in [*Moores's Case*] took a different view of the *Davis* case than we took, giving it more latitude than we thought it had, but the affirmance, in [*Bethlehem Steel Co.* v. *Moores*, supra, 335 U.S. 874] based on the authority of the *Davis* case, shows theirs was the correct view." *Baskin* v. *Industrial Accident Commission*, supra, 97 Cal. App. 2d 263. The United States Supreme Court ultimately affirmed that decision sub nom. *Kaiser Co.* v. *Baskin*, 340 U.S. 886, 71 S. Ct. 208, 95 L. Ed. 643 (1950) (per curiam).

upset an award granted by the state court, while in *Baskin* it in effect told the state court to make an award which had been denied." 9 A. Larson & L. Larson, Workers' Compensation Law (2006) § 145.02 [6], p. 145-12; see also Board of Trustees of the Leland Stanford Junior University, supra, 543 ("[t]he *Baskin* case lends strength to the conclusion that the [United States] Supreme Court really meant what it said when it bestowed its per curiam blessing on the Massachusetts interpretation of the *Davis* rule"). Thus, after *Moores's Case* and *Baskin*, it appeared that "*all* water front cases involving aspects pertaining both to the land and to the sea"; (emphasis added) *Moores's Case*, supra, 323 Mass. 167; fell within the twilight zone, and employees had a choice of either federal or state remedy in such cases.

Although the final steps in the development of the United States Supreme Court's jurisprudence governing the contours of state and federal jurisdiction over maritime workers' compensation claims are not directly relevant to the present appeal; but see footnote 19 of this opinion; we briefly review them for the sake of completeness. In *Calbeck* v. *Travelers Ins. Co.*, 370 U.S. 114, 115–16, 82 S. Ct. 1196, 8 L. Ed. 2d 368 (1962), the court considered whether the longshore act applied to workers' compensation claims that traditionally had fallen under the maritime but local doctrine, over which states constitutionally could exercise jurisdiction. In an extension of *Parker*, the court concluded that it did, thereby effectively reading out of the longshore act the provision that it applied only " 'if recovery . . . may not validly be provided by State law' . . . ."[14] Id., 126.

---

[14] See 9 A. Larson & L. Larson, supra, § 145.02 [6], p. 145-13 ("[t]o put the matter in blunt terms, the [United States] Supreme Court by judicial construction [in *Calbeck*] deleted from the [longshore act] the . . . condition of coverage 'and if recovery . . . through workmen's compensation proceedings may not validly be provided by [s]tate law' "). Amendments to the longshore act in 1972 repealed this provision, perhaps in recognition that *Calbeck* already had done so. See *Sun Ship, Inc.* v. *Pennsylvania*, 447 U.S. 715, 721 n.2, 100 S. Ct. 2432, 65 L. Ed. 2d 458 (1980) (by repealing

The court also concluded that acceptance of compensation under a state compensation law did not constitute an election of remedies precluding recovery under the longshore act. Id., 131.

In *Sun Ship, Inc.* v. *Pennsylvania,* 447 U.S. 715, 719, 100 S. Ct. 2432, 65 L. Ed. 2d 458 (1980), the United States Supreme Court considered the effect of the 1972 amendments to the longshore act, which had extended coverage of the longshore act to land-based injuries that previously had been remediable only under state law. Five Pennsylvania employees, who had been injured after the effective date of the amendments, sought benefits under the Pennsylvania workers' compensation act. Their employer claimed that the effect of the amendments had been to preempt the application of state compensation laws to such injuries. Id., 716–17. The United States Supreme Court concluded that "[t]he language of the 1972 amendments cannot fairly be understood as pre-empting state workers' remedies from the field of the [longshore act], and thereby resurrecting the jurisdictional monstrosity that existed before the clarifying opinions in *Davis* and *Calbeck.*" Id., 720. Accordingly, the court concluded that Congress intended that "federal jurisdiction would coexist with state compensation laws in that field in which the latter may constitutionally operate under the *Jensen* doctrine," including claims involving land-based injuries. Id., 722.

In light of the jurisdictional confusion culminating in the United States Supreme Court's adoption of the twilight zone doctrine in *Davis,* and the shock with which some observers greeted that court's apparent expansion of the doctrine when it affirmed *Moores's Case* and reversed *Baskin,* it is not surprising that

provision "Congress may simply have endeavored to reaffirm the correctness of the *Calbeck* result by removing possibly contradictory language").

courts have continued to disagree about the scope and contours of state jurisdiction over maritime workers' compensation claims. Several courts have followed *Moores's Case* in holding that claims involving injuries incurred while performing quintessentially maritime activities such as ship repair or longshoring on board a ship floating on navigable waters fall within the twilight zone,[15] while others have continued to follow *Jensen*'s holding that such claims are within the exclusive jurisdiction of the federal government.[16] These respective schools of thought are well represented by *Lane* v. *Universal Stevedoring Co.*, 63 N.J. 20, 21, 33–34, 304

[15] See *Duong* v. *Workers' Compensation Appeals Board*, 169 Cal. App. 3d 980, 984, 215 Cal. Rptr. 609 (1985) (state had jurisdiction over claim involving injury incurred by employee repairing ship floating in navigable waters); *Allsouth Stevedoring Co.* v. *Wilson*, 220 Ga. App. 205, 206, 210, 469 S.E.2d 348 (1996) (state had jurisdiction over claim involving injury incurred by longshoreman working on ship floating in navigable waters); *Logan* v. *Louisiana Dock Co.*, 541 So. 2d 182, 189 (La. 1989) (state had jurisdiction over claim by employee injured repairing ship in dry dock floating in navigable waters); *Lane* v. *Universal Stevedoring Co.*, 63 N.J. 20, 34, 304 A.2d 537 (1973) (state had jurisdiction over claim involving injury incurred by employee unloading cargo on ship floating in navigable waters); *Behrle* v. *London Guarantee & Accident Co., Ltd.*, 76 R.I. 106, 113, 68 A.2d 63 (1949) (state had jurisdiction over claim involving injury incurred by employee repairing Navy ship that was not involved in commerce), cert. denied, 339 U.S. 928, 70 S. Ct. 627, 94 L. Ed. 1349 (1950); *Indemnity Ins. Co. of North America* v. *Marshall*, 308 S.W.2d 174, 179–80 (Tex. App. 1957) (state had jurisdiction over claim involving injury incurred by employee repairing ship in dry dock floating on navigable waters); *American Original Foods, Inc.* v. *Ford*, 221 Va. 557, 558, 562, 272 S.E.2d 187 (1980) (state had jurisdiction over claim by mother of employee killed while doing repair work on ship floating in navigable waters).

[16] See *Flowers* v. *Travelers Ins. Co.*, 258 F.2d 220, 228 (5th Cir. 1958) (state lacked jurisdiction over claim involving injury incurred by employee doing repair work on ship floating in navigable waters), cert. denied, 359 U.S. 920, 79 S. Ct. 591, 3 L. Ed. 2d 582 (1959); *Wells* v. *Industrial Commission*, 277 Ill. App. 3d 379, 388, 660 N.E.2d 229 (1995) (state lacked jurisdiction over claim involving injury incurred by longshoreman loading ship floating in navigable waters); *Wellsville Terminals Co.* v. *Workmen's Compensation Appeal Board*, 534 Pa. 333, 334, 340, 632 A.2d 1305 (1993) (state lacked jurisdiction over claim involving injury incurred by employee repairing ship floating in navigable waters).

A.2d 537 (1973) (state had jurisdiction over claim involving injury incurred by longshoreman working in hold of ship floating on navigable waters under *Moores's Case*), and *Flowers* v. *Travelers Ins. Co.*, 258 F.2d 220, 228 (5th Cir. 1958) (state lacked jurisdiction over claim involving injury incurred by employee performing repair work on vessel floating in navigable waters under *Jensen*, which was not overruled by *Moores's Case*).

In *Lane*, the Supreme Court of New Jersey considered whether that state had jurisdiction over a worker's compensation claim filed by a longshoreman who had been injured while working in the hold of a ship floating on navigable waters. *Lane* v. *Universal Stevedoring Co.*, supra, 63 N.J. 21. After reviewing the development of the United States Supreme Court jurisprudence pertaining to state jurisdiction over maritime claims from *Jensen* through *Moores's Case*, the court concluded that allowing the employee to recover under state law would have no "detrimental effect . . . upon the federal maritime interest." Id., 31. The court recognized that, in an earlier decision, the New Jersey Appellate Division had concluded that the state had no jurisdiction over a claim by a stevedore who had been injured while unloading a ship floating in navigable waters. Id., 32, citing *Gaddies* v. *Trenton Marine Terminal, Inc.*, 86 N.J. Super. 125, 128, 206 A.2d 180 (App. Div. 1965). The New Jersey Supreme Court pointed out, however, that *Gaddies* had been criticized for attempting to distinguish claims concerning "unloading" a ship from the claims concerning the "repair" of a ship that were at issue in *Moores's Case* and *Baskin*. *Lane* v. *Universal Stevedoring Co.*, supra, 32. Specifically, the court noted that Larson's treatise had stated with respect to *Gaddies* that "[e]ither categories previously held federal are outside the twilight zone or they are not. Both ship repair and ship loading had equally been held federal. Once that line has been broken by a holding that a ship repair case

can be treated as a twilight zone case, there is no further ground for distinguishing an unloading case."[17] (Internal

[17] But see *Beverly* v. *Action Marine Services, Inc.*, 433 So. 2d 139, 142 (La. 1983). In *Beverly,* the Louisiana Supreme Court had concluded that that state had jurisdiction over a claim by the parents of an employee who had been killed while repairing and cleaning a ship floating in navigable waters. Id., 140. The court distinguished *Jensen* on the ground that the deceased employee, unlike the employee in *Jensen*, "was not a longshoreman." Id., 142. This reasoning has been criticized on the ground that "[c]onceptually, longshoring and ship repairing have an equally direct relation to navigation and commerce; ergo the coverage of either by state law would have an equally prejudicial effect on the uniformity of admiralty law." D. Collins, note, "Admiralty—*Beverly* v. *Action Marine Services, Inc.*: Twilight or Total Eclipse?" 58 Tul. L. Rev. 1237, 1246 (1984).

The dissent points out that the language in Larson's treatise that was quoted by the court in *Lane* is not included in the most recent edition of his work and that Larson, instead, states that " 'even under the twilight zone doctrine there will be cases falling outside the twilight zone, as when the claimant is clearly a maritime worker and is injured over indisputably navigable waters.' " That statement, however, comes near the end of a lengthy analysis of the current status of the *Jensen* rule, in which Larson states unequivocally that everything that the United States Supreme Court has said or done since its decision in *Davis* supports a conclusion that "[s]tates had in effect concurrent jurisdiction over maritime injuries in employments without regard to whether these employments prior to *Davis* had been placed within the federal or state province." 9 A. Larson & L. Larson, supra, § 145.05 [3], p. 145-127. Moreover, in support of the language cited by the dissent, Larson relied primarily on a case in which the court had concluded that the state did not have jurisdiction over a claim by a worker who had been injured while disassembling an engine on a ship that was docked on a navigable waterway *because a state statute provided that no compensation was payable to an employee whose injury was covered by the longshore act.* Id., § 145.07 [4], p. 145-143 n.20, citing *Hernandez* v. *Mike Cruz Machine Shop,* 389 So. 2d 1251 (Fla. App. 1980). As the dissent points out, in the digest to the treatise, Larson cites a Louisiana case that represents one side of the acknowledged split of authority on the constitutional issue. See 9 A. Larson & L. Larson, supra, § 145.07D [3], p. D145-40, citing *Wixom* v. *Travelers Ins. Co.*, 357 So. 2d 1343, 1344 (La. App. 1978) (state lacked jurisdiction over claim by employee injured while performing ship repairs on ship in navigable waters). Larson already had discussed this split in authority, however, and had declined to adopt *Wixom's* reasoning. See 9 A. Larson & L. Larson, supra, § 145.05 [3], p. 145-129. Moreover, in *Logan* v. *Louisiana Dock Co.*, 541 So. 2d 182, 188 n.17 (La. 1989), the Supreme Court of Louisiana expressly declined to follow *Wixom* and held that a claim involving an injury incurred on a boat in navigable waters was subject to state jurisdiction. Id., 189. Thus, the language relied on by the dissent is unsupported by any analysis and its unqualified tone is entirely inconsistent with the analysis that Larson *had* performed. Accordingly, we can only view it as an inexplicable

quotation marks omitted.) Id., 33, quoting 3 A. Larson, Workmen's Compensation Law (1971) § 89.40, p. 444 n.55. The court agreed with Larson's analysis of *Moores's Case* and *Baskin* and, accordingly, overruled *Gaddies* and concluded that the state had jurisdiction over the claim.[18] See *Lane* v. *Universal Stevedoring Co.*, supra, 33.

The United States Court of Appeals for the Fifth Circuit took a different view in *Flowers*. The issue in that case was whether the state of Texas had jurisdiction over a claim by an employee who had been injured while making repairs on a ship in a dry dock floating on navigable waters. *Flowers* v. *Travelers Ins. Co.*, supra, 258 F.2d 221. The court noted that, historically, "the doing of repair work on an existing vessel has been treated as so clearly maritime in nature that attempted application of State compensation laws would collide with that essential uniformity [of maritime law] which was the very breath of *Jensen*." Id., 222. It recognized that the court in *Davis* had created a jurisdictional twilight zone and that the doctrine appeared to have been greatly expanded in *Moores's Case* and *Baskin*. See id., 222–23. The court expressed concern, however, about "an accentuated instability in the everyday administration of compensation acts to amphibious employ-

discrepancy. In any event, the fact that Larson's treatise no longer uses the language that was cited in *Lane* does not affect the continuing validity of that case or its reasoning.

[18] Paradoxically, after concluding that the case was governed by *Moores's Case* and determining that the question of state jurisdiction "was not to be made on the basis of the rigid categorization of employees or work duties which had characterized the prior cases"; *Lane* v. *Universal Stevedoring Co.*, supra, 63 N.J. 33; the court in *Lane* went on to distinguish the case from *Jensen* factually on the ground that the employee in *Lane* very seldom had been required to work on board a ship. Id. As we discuss later in this opinion, however, we conclude that *Moores's Case* did away not only with the rigid categorization of work duties, but also with the need for courts to make hairline distinctions based on the frequency with which the injured employee had been required to work on navigable waters.

ees if [*Moores's Case* and *Baskin*] are thought to throw down the bars in complete disregard of the philosophy expressed in *Parker* v. *Motor Boat Sales, Inc.*, supra, [314 U.S. 244] and to this date not repudiated that Congress meant to draw the line where *Jensen* left it." *Flowers* v. *Travelers Ins. Co.*, supra, 223.

In *Flowers*, the Fifth Circuit also relied heavily on the decision of the United States Supreme Court in *Pennsylvania Railroad Co.* v. *O'Rourke*, 344 U.S. 334, 335, 73 S. Ct. 302, 97 L. Ed. 367 (1953). *O'Rourke* involved a claim by a railroad employee who had been injured in New Jersey while working on a car float that moved freight and passenger cars over navigable waters. Id. The issue before the court was whether the longshore act or the Federal Employers' Liability Act (liability act); 45 U.S.C. § 51 et seq.; applied to his claim. *Pennsylvania Railroad Co.* v. *O'Rourke*, supra, 334. The court considered as a threshold question whether the claim was covered by the longshore act. Id., 336–37. It concluded that the longshore act "provided means for indemnification for injuries for . . . maritime employees who were beyond the constitutional reach of state legislation. A quarter of a century of experience has not caused Congress to change the plan. The *Jensen* line of demarcation between state and federal jurisdiction has been accepted. . . . New Jersey could not have enacted statutes granting compensation for [the employee's] injury on navigable water. Therefore [the employee] comes within the coverage of [the longshore act]." (Citation omitted; internal quotation marks omitted.) Id., 337. Because coverage under the longshore act was exclusive, the federal liability act did not apply. Id., 337–38. The court in *Flowers* concluded that, "[i]f for [the employee in *O'Rourke*] a state could not validly provide for workmen's compensation, then surely it could not for one in [the status of the employee in *Flowers*] whose work as a repairman on an existing vessel reeked

equally of the sea." *Flowers* v. *Travelers Ins. Co.*, supra, 258 F.2d 224.

Finally, the court in *Flowers* rejected the implications of the cases holding that, under *Moores's Case*, traditional maritime claims now fell within the twilight zone, reasoning that, "[i]f with no marginal employment, no obscurity concerning the nature and kind of work or its importance to maritime commerce, no undefined or undefinable boundaries to set it apart from land-based activity, it is nonetheless left entirely to the choice of the injured employee to determine which route he will take, then *Jensen* has indeed lost its vitality, the *Jensen* line of demarcation, reaffirmed in *Parker*, has been overruled, and administrative finality, emphasized in *Davis* is just so much makeweight." Id., 228. The court concluded that the claim did not fall within the twilight zone and that the state did not have jurisdiction over it. Id.

We find the reasoning of the court in *Lane* to be more persuasive than that of the court in *Flowers*. First, it appears to us that the court in *Flowers* placed undue emphasis on the scope of the longshore act as negatively defining the scope of states' jurisdiction under the federal constitution. Although the United States Supreme Court in *Parker* v. *Motor Boat Sales, Inc.*, supra, 314 U.S. 249–50, held that the landward scope of the longshore act was defined by *Jensen*, it expressly declined to consider the continued vitality of the constitutionally based rule that states could not operate outside that line.[19] See id.

---

[19] We also note that the scope of the longshore act now has been expanded to include claims involving certain land-based injuries that always have been within the jurisdiction of the states. See *Sun Ship, Inc.* v. *Pennsylvania,* supra, 447 U.S. 716–17. The United States Supreme Court has held that the states and federal government have concurrent jurisdiction over these claims and over claims involving injuries on navigable water that traditionally have been within the jurisdiction of the states under the maritime but local doctrine. See id.; *Calbeck* v. *Travelers Ins. Co.,* supra, 370 U.S. 126–28. Larson states that the United States Supreme Court "did not necessarily imply that

Second, we believe that the court in *Flowers* placed undue emphasis on the statement of the United States Supreme Court in *Pennsylvania Railroad Co.* v. *O'Rourke*, supra, 344 U.S. 337, that, under *Jensen*, "New Jersey could not have enacted statutes granting compensation for [the employee's] injury on navigable water." The threshold issue in *O'Rourke* was whether the employee's claim was covered by the longshore act, and the court in *Parker* clearly had indicated that the longshore act covered *all* claims by "employees engaged 'in maritime employment, in whole or in part, upon the navigable waters of the United States'"; *Parker* v. *Motor Boat Sales, Inc.*, supra, 314 U.S. 248–49; *regardless* of whether states constitutionally were barred from exercising jurisdiction over such claims. Id., 250. Thus, the court's statement in *O'Rourke* appears to have been unnecessary for the holding of that case. Moreover, because *O'Rourke* did not involve issues of state jurisdiction over maritime claims, the court had no reason to consider the effect of *Moores's Case* and *Baskin* on the *Jensen* rule. Accordingly, we are not persuaded that the court in *O'Rourke* intended to overrule those cases.[20]

a symmetrical result must follow as to cases traditionally falling [within the exclusive jurisdiction of the federal government], since there were arguments, such as the legislative history of the [longshore act], that would not apply in the same way to the issue of affirmative state competence. But a strong case could be made for the proposition that the dominant rationale of all the [United States] Supreme Court cases from *Davis* through [*Moores's Case*] and *Baskin* to *Calbeck* was one that also applied to the issue of state jurisdiction. That rationale could be bluntly stated: The [United States] Supreme Court simply did not want to be bothered with hairsplitting and archaic distinctions between activities of local concern and activities prejudicing the uniformity of maritime law, especially when what was at stake was no longer some compensation versus no compensation, but merely the possible differential between two compensation acts." 9 A. Larson & L. Larson, supra, § 145.05 [3], p. 145-129.

[20] Other courts also have reached this conclusion. See *Richard* v. *Lake Charles Stevedores, Inc.*, 95 So. 2d 830, 832–33 (La. App. 1957) (referring to court's statement in *O'Rourke* as dicta and concluding that *O'Rourke* did not govern claim involving scope of state jurisdiction), cert. denied, 355

Finally, we are not persuaded by the court's argument in *Flowers* that the expansion of the twilight zone doctrine in *Moores's Case* and *Baskin* completely undermined the desire for administrative efficiency and finality that underlay *Davis*, and that the United States Supreme Court could not have intended any such result. *Davis* was intended to reduce the jurisdictional uncertainty and confusion that had been created by the *Jensen* doctrine by giving a presumption of correctness to the forum in which the employee first brought his claim, provided that the claim fell within the twilight zone. See *Davis* v. *Dept. of Labor,* supra, 317 U.S. 256. *Moores's Case* merely extended the twilight zone "to include within a wide circle of doubt all water front cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other."[21] *Moores's*

---

U.S. 952, 78 S. Ct. 535, 2 L. Ed. 2d 529 (1958); *Indemnity Ins. Co.* v. *Marshall,* 308 S.W.2d 174, 179 (Tex. App. 1957) ("taking into consideration the history of the [*Moores's*] case and of the *Baskin* cases, we think it cannot have been the Court's intention in the *O'Rourke* case to overrule those cases by implication").

[21] The dissent points out that the court in *Moores's Case* stated that "[w]e are the more inclined to include within the twilight zone the case of a workman engaged in an ordinary land occupation although occasionally going upon a dry dock or vessel to make repairs"; (internal quotation marks omitted) *Moores's Case,* supra, 323 Mass. 167; thereby suggesting that a workman who was not primarily engaged in an ordinary land occupation would *not* fall within the twilight zone. In the very next sentence of *Moores's Case,* however, the court stated: "Moreover, the distinction between working on navigable water in repairing a previously completed vessel and doing precisely the same work on navigable water upon a vessel in process of construction may be thought a narrow one of doubtful practical validity." Id., 167–68. This language clearly indicates that, even if the claimant's primary employment had been ship repair, his claim would have been treated the same as if he had been engaged in shipbuilding, that is, as subject to state compensation law. Thus, as the court in *Lane* and the other authorities that we have cited recognized, after *Moores's Case,* there simply is no *principle* that courts can apply in a reasoned, consistent manner to determine the contours of exclusive federal jurisdiction. An injury incurred over the naviga-

*Case,* supra, 323 Mass. 167. By vacating the decision of the California court in *Baskin,* the United States Supreme Court went even further than it had in affirming *Moores's Case,* and effectively adopted a presumption in favor of state jurisdiction in such cases. To the extent that these cases introduced uncertainty and confusion into the administration of maritime claims by allowing injured employees to choose the forum for types of claims that previously had been held to be purely maritime, the cases also *eliminated* uncertainty and confusion about whether the choice of jurisdiction would be the correct one and the need for courts to maintain hairline distinctions that seemed implausible on their face.[22] "After all, the [United States]

---

ble waters while performing quintessentially maritime activities had been found to fall within the twilight zone, because "a reasonable argument [could] be made either way . . . ." Id., 167. As the authorities that we rely on have recognized, it is in the very nature of amphibious employment that a reasonable argument can be made either way.

[22] The dissent argues that this reading of *Moores's Case* "cannot help but introduce the type of uncertainty and variability into the compensation scheme that the [United States] Supreme Court and Congress have sought to overcome since *Jensen* . . . ." Thus, the dissent believes that a rule under which some, but not all, claims involving injuries suffered by stevedores are subject to state jurisdiction is more certain and uniform than a rule under which all such injuries are treated the same. We cannot agree. The United States Supreme Court in *Davis* could hardly have expressed less concern with uniformity understood as the perpetuation of a realm of exclusive federal jurisdiction. Rather, its clear intent was to avoid "the necessity of handling coverage questions on a case-by-case basis, with all the administrative burdensomeness and endless uncertainty that this entails." 9 A. Larson & L. Larson, supra, § 145.05 [3], p. 145-130.

The dissent also relies on the United States Supreme Court's references to exclusive federal jurisdiction under *Jensen* in *Sun Ship, Inc.* v. *Pennsylvania,* supra, 447 U.S. 719; see also id., 722. Those references were made in the context of interpreting Congress' general understanding of *Jensen* when it enacted the longshore act, however, and not in an attempt to define the current scope of "nonlocal maritime injuries" under the constitution. Id., 719.

The dissent further relies on dicta in *Hahn* v. *Ross Island Sand & Gravel Co.,* 358 U.S. 272, 273, 79 S. Ct. 266, 3 L. Ed. 2d 292 (1959), that "if the case were not within the twilight zone . . . the [longshore act] would provide the exclusive remedy." (Internal quotation marks omitted.) In *Hahn,* the employee was injured while working on a barge used in connection with

the dredging of sand and gravel in a lagoon opening into a navigable river in Oregon. Id., 272. He received compensation under the longshore act. Id., 273. Because the employer had not obtained state workers' compensation coverage, the employee was entitled to bring a negligence action against it under Oregon's compensation law and he did so. Id. The employer claimed that the state action was barred because the longshore act provided an exclusive remedy. Id. The United States Supreme Court held that, because the claim fell within the twilight zone, the longshore act did not bar recovery under state law. Id. In the language relied on by the dissent in the present case, it also stated that, if the claim had not been within the twilight zone, jurisdiction under the longshore act would have been exclusive. Id. In dissent, Justice Stewart, joined by Justice Harlan, contended that, under *Davis*, because a court had found jurisdiction under the longshore act, the employee was limited to recovery under that act regardless of whether the claim fell into the twilight zone. Id., 274–75 (Stewart, J., dissenting).

Thus, the primary teaching to be gleaned from *Hahn* is that states have jurisdiction over an injury incurred by an employee while on a boat in navigable waters, a result that is hardly consistent with, much less dictated by, *Jensen*. The court's statement that injuries incurred outside the twilight zone would be subject to exclusive federal jurisdiction is: (1) dicta; and (2) of no assistance in determining the contours of the twilight zone.

Moreover, contrary to the dissent's contention, in enacting the longshore act and subsequent amendments, Congress was not concerned with protecting the uniformity of maritime law, but with ensuring a minimum recovery for all injured waterfront workers, which our decision does not affect. See *Calbeck* v. *Travelers Ins. Co.*, supra, 370 U.S. 121–22 (purpose of 1972 amendments to longshore act was "to assure the existence of a compensation remedy for every . . . injury, without leaving employees at the mercy of the uncertainty, expense, and delay of fighting out in litigation whether their particular cases fell within or without state acts under the 'local concern' doctrine"); *Davis* v. *Dept. of Labor*, supra, 317 U.S. 252 (manifest purpose of longshore act was to provide certainty of compensation for workers whose duties were partly on land and partly on navigable waters). If uniform treatment of waterfront compensation claims—understood as exclusive federal jurisdiction over such claims—had been Congress' primary concern, nothing prevented it from preempting the application of state law from the field of the longshore act, which it did not do. See *Sun Ship, Inc.* v. *Pennsylvania*, supra, 447 U.S. 720; *Calbeck* v. *Travelers Ins. Co.*, supra, 126–27.

The dissent states that this conclusion is incorrect because one purpose of the 1972 amendments was to provide waterfront employers with limited and predictable liability. That purpose, however, is common to all workers' compensation schemes and does not imply any special legislative concern with protecting the uniformity of maritime law. In any event, whatever Congress' understanding of the *Jensen* rule or its desires for uniformity

ways to spend its time than in tracing ghostly defini-
tional boundaries between, say, the 'repair' of a ship
and its 'reconversion,' and too much self-respect and
sense of humor to tell us with a straight face that award-
ing state workers' compensation in the former case
would shatter the uniformity of maritime law, while a
similar award in the latter case would not." 9 A. Lar-
son & L. Larson, supra, § 145.05 [3], p. 145-131. Courts
not only had been required to differentiate between
these virtually identical types of work under *Jensen*,
they also had been required to make jurisdictional deter-
minations based solely on the precise geographical loca-
tion of employees who stepped into and out of state
jurisdiction many times over the course of their work-
days, another factor that hardly could have had any
real bearing on federal law governing navigation or
commerce.[23]

---

were, they are not binding authority with respect to the current scope
of state jurisdiction under article three, § 2, and article one, § 8, of the
federal constitution.

Finally, although the dissent repeatedly suggests that our decision endan-
gers the uniformity of maritime law and thereby creates a risk to interstate
and international commerce, it never explains the substance or the mechan-
ics of this risk. We are hard pressed to believe that a shipping company
will choose one state's ports over another state's because the difference
between the amounts of state and federal compensation that workers receive
in the fraction of waterfront claims that traditionally were considered to
be purely maritime, but now are subject to concurrent jurisdiction, is greater
in one state than another.

[23] See, e.g., *Allsouth Stevedoring Co.* v. *Wilson*, 220 Ga. App. 205, 210, 469
S.E.2d 348 (1996); *Richard* v. *Lake Charles Stevedores, Inc.*, 95 So. 2d 830,
832 (La. App. 1957), cert. denied, 355 U.S. 952, 78 S. Ct. 535, 2 L. Ed. 2d 529
(1958). In *Richard*, the court concluded that, under *Moores's Case* and
*Baskin*, the state had jurisdiction over a claim by an employee who had
been injured while working on a ship floating in navigable waters. *Richard*
v. *Lake Charles Stevedores, Inc.*, supra, 832. In support of this conclusion,
the court pointed out that, "[h]ad this same longshoreman plaintiff been
injured in the same manner, in the course of his employment with the same
employer, having reported for work the same day, his employer subjected
to the same risks and paying the same insurance premiums, [the] plaintiff
would undoubtedly have been entitled to recovery under the Louisiana
compensation law, even before the *Davis* case, had he been injured on land

Unlike the court in *Flowers*, we do not find it improbable that the United States Supreme Court welcomed the opportunity, presented by *Moores's Case*, to escape from this jurisdictional morass. We are compelled to conclude, therefore, that, although *Jensen* never has been expressly overruled, the United States Supreme Court, in its decisions in *Moores's Case* and *Baskin*, clearly has signaled that it no longer will apply the *Jensen* rule to bar waterfront claims under a state's workers' compensation law in cases in which the claim previously would have been barred solely on the basis of the particular type of work that the employee was engaged in or his precise geographical location at the time of injury.[24] Instead, after *Moores's Case* and *Baskin*,

or on the gangplank a few feet distant from the present accident aboard ship . . . ." Id.

[21] See 9 A. Larson & L. Larson, supra, § 145.05 [3], p. 145-129 ("the [United States] Supreme Court [has] not forbidden a state to apply its compensation law to a waterfront injury [pursuant to *Jensen*] . . . since only a few years after the [longshore act] was passed").

In *Director, Office of Workers' Compensation Programs* v. *Perini North River Associates*, supra, 459 U.S. 315–16, the United States Supreme Court concluded that the longshore act, as amended in 1972 to include a "status" requirement that the injured employee must have been engaged in maritime employment, applied to a claim involving an injury incurred by an employee who had not been engaged in maritime employment at the time of his injury, but had been on navigable waters. Justice Rehnquist argued in a dissenting opinion that Congress had not been concerned with covering such injuries when it amended the longshore act because, "[w]hatever force the *Jensen* rule may once have had, it is now perfectly clear that a shore-based worker who is normally covered by a state compensation program may still recover state benefits even though he is injured over navigable waters. Surely no Member of this Court would question the fact that the construction worker injured in this case could have received a state award even though he was on a barge in the Hudson River when he was injured. The concern about the inability of the States to protect land-based workers who may temporarily cross the *Jensen* line is no longer significant . . . ." Id., 339–40 (Rehnquist, J., dissenting). The majority responded that "[t]his position is by no means 'perfectly clear' "; id., 320 n.30; and cited a number of lower court cases that had held that such claims fall within exclusive federal jurisdiction. Id., 320–21 n.30. The majority did not cite its own decisions in *Moores's Case* and *Baskin*, however, or the other state cases in which the courts had concluded that the states have jurisdiction over waterfront claims involving

"[t]he question . . . is not whether the ship was being constructed or being repaired [or whether the employee was on an extension of the land or on the navigable waters] but whether the *employment relation* (as distinguished from the work being done [or the specific location of the employee] at the time of the accident) was sufficiently local [and land-based] that the state has a valid interest in providing its compensation remedy or whether the employment relation was so characteristically maritime that application of state law would work material prejudice to the general maritime law." (Emphasis in original; internal quotation marks omitted.) *Lane* v. *Universal Stevedoring Co.*, supra, 63 N.J. 29; see also *Duong* v. *Workers' Compensation Appeals Board*, 169 Cal. App. 3d 980, 984, 215 Cal. Rptr. 609 (1985) (court must give "primary consideration to the mainly land-based character of employment and the state-based employment contract, as opposed to whether the injury site was actually in navigable waters"). Put another way, in deciding whether a state has jurisdiction over a maritime workers' compensation claim, the determinative factor is no longer the precise nature of the employee's activity or his location at the time of his injury, but whether the application of the state's compensation law to the claim materially could undermine the uniformity of the federal laws governing navigation or commerce. When the employer and the employee are locally based, the employment contract is performed locally and the employer is required under the state act to secure compensation for the employee for any land-based injuries, we cannot perceive, and none of the cases finding exclusive federal jurisdiction under these circumstances has explained, how the

injuries on navigable waters. In any event, as in *Pennsylvania Railroad Co.* v. *O'Rourke*, supra, 344 U.S. 337, the scope of state jurisdiction over maritime compensation claims was not before the court in *Perini North River Associates*, and the court's dicta on that question was not necessary for the holding of the case.

application of the state act to a claim involving an injury incurred by the employee on the state's territorial waters materially could undermine the integrity of federal maritime law.[25] See *Davis* v. *Dept. of Labor*, supra, 317 U.S. 256 (twilight zone "includes persons . . . who are, as a matter of actual administration, in fact protected under the state compensation act"). Accordingly, we conclude that the state has jurisdiction over such claims.

With these principles in mind, we must determine whether the state act constitutionally applies to the plaintiff's claim in the present case. As we have indicated, the plaintiff was injured while unloading a ship floating in navigable waters in New Haven harbor. The defendant concedes that, had the plaintiff "been injured in a land-based accident he would be covered under the [state act]," and thereby implicitly concedes that

[25] We note that, in *Jensen*, the deceased employee had been employed in New York by a Kentucky corporation that owned the ship on which he was killed. See *Southern Pacific Co.* v. *Jensen*, supra, 244 U.S. 207. The state of New York entered an award against the ship owner. Id., 209. The United States Supreme Court concluded that New York constitutionally could not "subject foreign ships coming into her ports to such obligations as those imposed by her Compensation Statute . . . ." Id., 217. It does not appear that *Moores's Case, Baskin, Lane* and the other cases in which courts have concluded that the state had jurisdiction over waterfront compensation claims; see footnote 15 of this opinion; involved claims against a foreign ship owner, and it may be that *Jensen* is distinguishable on this ground and would not fall within the twilight zone if decided today.

We further note that our decision in *Leszczymski* v. *Andrew Radel Oyster Co.*, supra, 102 Conn. 513, involved the death of a *crew member* who had fallen off a boat while it was docked in Bridgeport on navigable waters. The twilight zone doctrine adopted in *Moores's Case* applies only to waterfront claims over which the federal government colorably has jurisdiction under the longshore act, not to claims by seamen, which are covered by the Jones Act. See footnote 6 of this opinion. The scope of concurrent state and federal jurisdiction over claims by seamen, if it exists at all, is not before us in the present case. Accordingly, we overrule *Leszczymski* only to the extent that it suggests that *all* claims involving injuries on the navigable water, including those that meet the requirements of the twilight zone doctrine, are within the exclusive jurisdiction of the federal government.

the sole reason that the board concluded that the claim was barred was that the injury occurred on navigable waters, and not that the employment relation was insufficiently local or that application of the state act under these circumstances would materially undermine the uniformity of federal maritime law.[26] Thus, we need not address the plaintiff's claim that the board improperly failed to address the commissioner's denial of his motion to correct the finding and award and his motion for summary remand.

We conclude, therefore, that the plaintiff's claim is governed by *Moores's Case* and *Baskin* and falls squarely within the twilight zone doctrine as adopted by the United States Supreme Court in those cases. See *Lane* v. *Universal Stevedoring Co.*, supra, 63 N.J. 33 (no reason to distinguish "unloading" claims from "repair" claims at issue in *Moores's Case* and *Baskin*). Accordingly, we conclude that the board improperly determined that the claim was not within the jurisdiction of the commissioner.

The judgment is reversed and the case is remanded to the board with direction to sustain the plaintiff's appeal.

In this opinion BORDEN, NORCOTT, KATZ, PALMER and VERTEFEUILLE, Js., concurred.

ZARELLA, J., dissenting. Under the rule articulated by the majority, state compensation laws will be extended seaward and allowed to coexist with federal jurisdiction over any claim "involving injuries incurred on navigable waters when the employer and the employee are locally based, the employment contract is performed within

---

[26] The plaintiff expressly represented to the board that the defendant does business in Connecticut only, the plaintiff is a Connecticut resident and the injury occurred within the territorial waters of the state. The defendant never disputed that claim, but contended that the sole relevant finding was that the plaintiff was injured on a ship floating on navigable waters.

the state and partly on land, the injury took place on the state's territorial waters and the employer [is] required under the state [Workers' Compensation] [A]ct to secure compensation for any land based injuries incurred by the employee." Majority opinion, p. 5; cf. *Lane* v. *Universal Stevedoring Co.*, 63 N.J. 20, 30–34, 304 A.2d 537 (1973). Thus, the emphasis will be on the "employment relation" and "the determinative factor [will] no longer [be] the precise nature of the employee's activity or his location at the time of his injury, but whether the application of the state's compensation law to the claim materially could undermine the uniformity of the federal laws governing navigation or commerce." Majority opinion, p. 32. The majority reasons that adoption of such a rule will reduce the jurisdictional uncertainty and confusion that has reigned since *Southern Pacific Co.* v. *Jensen*, 244 U.S. 205, 37 S. Ct. 524, 61 L. Ed. 1086 (1917), in cases in which waterfront claims previously would have been barred because of the type of work in which the employee was engaged or because of his location at the time of the injury. I disagree. In my view, the rule represents an unwarranted departure from United States Supreme Court precedent, will have the deleterious effect of freeing state jurisdiction from traditional constitutional restraints and will undermine the uniformity and harmony of maritime law that the majority purportedly seeks to protect. Accordingly, I respectfully dissent.

I

I begin by reviewing the applicable legal principles. In light of the fact that "this area of the law [has] been dominated—indeed created—from the beginning by the United States Supreme Court, by far the most important inquiry [is] what the Supreme Court [has] revealed as to its actual or probable position . . . ." 9 A. Larson & L. Larson, Workers' Compensation Law (2006) § 145.05

[3], p. 145-127. I therefore focus my discussion on Supreme Court precedent.

Since *Jensen*, the United States Supreme Court has attempted to balance several considerations each time it has ruled on claims involving maritime injuries. These include a desire to (1) minimize uncertainty for the injured worker with respect to the source of coverage, (2) encourage uniformity in the law so as not to impede or hamper interstate and international commerce, (3) ensure a degree of equity in the relief available to workers within the different states, and (4) maintain the constitutional requirement of exclusive federal jurisdiction in cases involving indisputable maritime injuries that occur on navigable waters.

Because of the seemingly infinite number of ways in which maritime workers may be injured, the legal analysis in any given case is fact intensive, sometimes making it difficult to articulate general principles for future guidance. Nevertheless, a review of the case law suggests that, at different times, one or another of the previously enumerated considerations has caused the court to move in a particular direction. *Jensen*, for example, is notable for having drawn a clear line of demarcation between state and federal jurisdiction at water's edge. See *Southern Pacific Co.* v. *Jensen*, supra, 244 U.S. 217–18. This had the benefit of maintaining the uniformity of maritime law by preventing the states from intruding on what the court deemed an area of exclusive federal jurisdiction. Id., 218. It also reduced uncertainty by making clear where state and federal jurisdiction began and ended for purposes of seeking compensation. At the same time, the *Jensen* line exposed the fact that substantial inequities existed in the availability of relief because Congress had provided no compensation for maritime injuries incurred by workers on navigable waters, whereas many states had provided at least some degree of coverage for maritime

related injuries that occurred on land. See, e.g., 9 A. Larson & L. Larson, supra, § 145.02 [2], pp. 145-5 through 145-6 ("the law was relatively clear—perhaps clearer than it has ever been since, but the clarity was obtained at the price of denying compensation to thousands of workers in very hazardous 'amphibious' occupations").

Thereafter, the Supreme Court established the "maritime but local" doctrine in *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U.S. 469, 42 S. Ct. 157, 66 L. Ed. 321 (1922). In that case, the court determined that states would be permitted to extend their jurisdiction and coverage seaward to "non-maritime" injuries on navigable waters, which were defined as injuries not directly related to navigation or commerce. Id., 476. Because the injuries were considered local, the doctrine did not interfere with the uniformity of maritime law or with the exclusivity of federal jurisdiction over purely maritime injuries. See id. However, the newly articulated rule assigning states sole jurisdiction over such injuries required case-by-case determinations, forced workers to make difficult choices as to the applicability of a state's compensation scheme and created uncertainty for employers as to whether their contributions to a state insurance fund would be sufficient to protect them from liability. See *Director, Office of Workers' Compensation Programs* v. *Perini North River Associates*, 459 U.S. 297, 306–307, 103 S. Ct. 634, 74 L. Ed. 2d 465 (1983). It also failed to address the continuing differences in coverage provided by the various states and the lack of federal coverage for strictly maritime injuries incurred on navigable waters. See *John Baizley Iron Works* v. *Span*, 281 U.S. 222, 230–31, 50 S. Ct. 306, 74 L. Ed. 2d 819 (1930) (rejecting application of state compensation laws because repairing completed ship in navigable waters had direct and intimate connection with navigation and commerce).

To remedy the inequities created by this situation, Congress passed the Longshoremen's and Harbor Workers' Compensation Act (longshore act) in 1927; c. 509, 44 Stat. 1424, codified as amended at 33 U.S.C. § 901 et seq.; which codified the *Jensen* line of demarcation between state and federal jurisdiction and provided the coverage previously lacking for maritime workers injured on navigable waters "if recovery . . . through work[ers'] compensation proceedings may not validly be provided by state law." (Internal quotation marks omitted.) *Davis* v. *Dept. of Labor & Industries*, 317 U.S. 249, 253, 63 S. Ct. 225, 87 L. Ed. 2d 249 (1942). Disputes continued, however, regarding whether injuries on navigable waters were directly related to commerce or navigation, with sometimes puzzling results. See, e.g., *Parker* v. *Motor Boat Sales, Inc.*, 314 U.S. 244, 245–47, 62 S. Ct. 221, 86 L. Ed. 184 (1941) (worker who drowned while testing outboard motor was clearly engaged in maritime employment, even though normal duties were primarily nonmaritime in character). This led to the court's articulation of the "twilight zone" in *Davis* v. *Dept. of Labor & Industries*, supra, 256, to resolve jurisdictional questions in very close cases.

In *Davis*, the husband of the petitioner, who was seeking state benefits, had drowned after falling off a barge lying in navigable waters while examining steel he had cut in the process of dismantling a bridge. Id., 251. The United States Supreme Court reversed the decision of the Washington Supreme Court denying the petitioner state benefits because of the difficulty in determining whether relief should be provided under federal or state law. Id., 257–58. The court defined the "twilight zone" as that area of uncertainty between state jurisdiction under the "maritime but local" doctrine and exclusive federal jurisdiction when the injury occurred on navigable waters but its essential character was in doubt. Id., 256. In that "shadowy area"; id., 253; in which

both workers and employers were thrust on the "horns of [a] jurisdictional dilemma" because they could not be certain in advance of litigation whether state or federal law applied; id., 255; "the line separating the scope of the two being undefined and undefinable with exact precision" and such a determination being largely a question of fact, the court would give "presumptive . . . weight to the conclusions of the appropriate federal authorities," in the absence of substantial evidence to the contrary, *and* to the constitutionality of the applicable state statutes. Id., 255–56. Consequently, borderline cases would be resolved in favor of coverage by the jurisdiction that the injured worker initially had selected. 9 A. Larson & L. Larson, supra, § 145.02 [5], p. 145-10.

The concept of the "twilight zone" reduced uncertainty because maritime workers now could apply for state or federal benefits in circumstances "where [longshore act] coverage was available and where the applicability of state law was difficult to determine"; *Director, Office of Workers' Compensation Programs* v. *Perini North River Associates*, supra, 459 U.S. 309; and be assured of receiving compensation without suffering serious financial loss due to an error of choice. See *Davis* v. *Dept. of Labor & Industries*, supra, 317 U.S. 254. The uniformity of maritime law would be affected only in marginal situations in which state jurisdiction was, in any event, questionable. The "twilight zone" did not affect injuries subject to exclusive federal jurisdiction because their essential character was not in doubt. In fact, *Davis* expressly recognized the continued existence of the *Jensen* line separating federal and state jurisdiction when it stated that "[o]verruling the *Jensen* case would not solve [the jurisdictional] problem" because the court had held in *Parker* that Congress, by enacting the longshore act, had "accepted the

*Jensen* line of demarcation between state and federal jurisdiction."[1] Id., 256.

The Supreme Court's next major ruling was issued in *Calbeck* v. *Travelers Ins. Co.*, 370 U.S. 114, 82 S. Ct. 1196, 8 L. Ed. 2d 368 (1962), in which it determined that concurrent state and federal jurisdiction could be exercised in cases governed by the "maritime but local" doctrine. See id., 126–27. The extension of federal jurisdiction to cases previously covered by state law had the effect of ensuring less uncertainty as to whether an exclusive state remedy applied when the injury occurred on navigable waters, greater equity in the relief available to workers in different states and, to the extent that federal benefits were higher than state benefits, greater uniformity in the law. As a result, all workers who incurred injuries on navigable waters

---

[1] In asserting that the United States Supreme Court's affirmation of the *Jensen* line in *Davis* "hardly constitutes a ringing endorsement of the rigid *Jensen* rule," the majority uses unnecessary hyperbole to suggest that I believe that *Davis* unequivocally endorses *Jensen*. Footnote 9 of the majority opinion. This is not the case. I do not view *Davis* as a "ringing endorsement" of *Jensen* because, in creating the "twilight zone," the court *precluded* exclusive federal jurisdiction in cases that occupied that "shadowy area" in which state laws also could provide compensation for injuries incurred on navigable waters. *Davis* v. *Dept. of Labor & Industries*, supra, 317 U.S. 253. I merely make the point that the court acknowledged that areas of exclusive state and federal jurisdiction continued to remain *even after* creation of the "twilight zone" to deal with the "doubtful jurisdictional line" separating the two; id., 256; a conclusion that the majority does not appear to dispute. Although the Supreme Court subsequently endorsed concurrent jurisdiction in cases falling within the "maritime but local" doctrine; see *Calbeck* v. *Travelers Ins. Co.*, 370 U.S. 114, 126–27, 82 S. Ct. 1196, 8 L. Ed. 2d 368 (1962); and interpreted *Davis* to mean that concurrent jurisdiction could be exercised in cases falling within the "twilight zone"; see *Sun Ship, Inc.* v. *Pennsylvania*, 447 U.S. 715, 718, 100 S. Ct. 2432, 65 L. Ed. 2d 458 (1980); thus demonstrating, as the majority points out, that "the scope of the longshore act does not negatively define the scope of state jurisdiction under the [federal] constitution," these developments do not diminish the fact that the court in *Davis* did not overrule *Jensen* or suggest that exclusive jurisdiction no longer existed with respect to cases that did not fall within the "twilight zone."

would be covered by the longshore act, regardless of whether state law also applied. This modification to the "maritime but local" doctrine had no material effect on exclusive federal jurisdiction in cases in which an injury was clearly maritime in character.

In 1972, Congress amended the longshore act to provide federal coverage for maritime injuries that occurred on land by expanding the definition of "navigable waters" to include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel." Pub. L. No. 92-576, § 2, 86 Stat. 1251 (1972), codified as amended at 33 U.S.C. § 903 (a). The amendment defined workers eligible to receive benefits as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairperson, ship-builder and shipbreaker . . . ." Pub. L. No. 92-576, § 2, 86 Stat. 1251 (1972), codified as amended at 33 U.S.C. § 902 (3). Previous language providing that federal coverage was available "if recovery . . . through work[ers'] compensation proceedings may not validly be provided by State law" was eliminated; Pub. L. No. 92-576, § 2, 86 Stat. 1251 (1972); thus recognizing the principle of concurrent jurisdiction established in *Calbeck*. At the same time, Congress enacted a generous increase in federal benefits that exceeded most existing state benefits. The amendments were inspired by, among other things, a desire to eliminate the inequities created when workers whose duties required them to make frequent trips between ship and shore continually moved in and out of federal jurisdiction and received different benefits depending on where they were injured. See *Northeast Marine Terminal Co.* v. *Caputo*, 432 U.S. 249, 262–63, 97 S. Ct. 2348, 53 L. Ed. 2d 320 (1977). The amendments also sought to eliminate dis-

parities in the benefits received by workers in different states for land based injuries and to protect ship owners and employers of longshoremen from lawsuits seeking damages in tort on navigable waters. See id., 261–63. Accordingly, the amendments, which allowed maritime workers on land and sea to receive the same federal benefits regardless of where they were injured, ensured certainty for both employers and workers as to the source and amount of compensation, greater uniformity in the law[2] and an overall increase in benefits for work-

[2] The majority states that, "in enacting the longshore act and subsequent amendments, Congress was not concerned with protecting the uniformity of maritime law, but with ensuring a minimum recovery for all injured waterfront workers . . . ." Footnote 22 of the majority opinion. This is not an accurate representation of Congressional intent, as indicated in the following passage from the Congressional committee report explaining the purpose of the act: "The present Act, insofar as longshoremen and ship builders and repairmen are concerned, covers only injuries which occur 'upon the navigable waters of the United States.' Thus, *coverage of the present Act stops at the water's edge; injuries occurring on land are covered by State Work[ers'] Compensation laws. The result is a disparity in benefits payable . . . for the same type of injury depending on which side of the water's edge and in which State the accident occurs.*

* * *

*"The intent of the Committee is to permit a uniform compensation system to apply to employees who would otherwise be covered by this Act for part of their activity."* (Emphasis added.) H.R. Rep. No. 92-1441, pp. 10–11 (1972); accord S. Rep. No. 92-1125, pp. 12–13 (1972); see also *P.C. Pfeiffer Co.* v. *Ford,* 444 U.S. 69, 83, 100 S. Ct. 328, 62 L. Ed. 2d 225 (1979) ("Congress intended to apply a simple, uniform standard of coverage").

The Supreme Court further explained in *Northeast Marine Terminal Co.* v. *Caputo,* supra, 432 U.S. 249, that "[t]he main concern of the 1972 Amendments was not with the scope of coverage but with accommodating the desires of three interested groups: (1) shipowners who were discontented with the decisions allowing many maritime workers to use the doctrine of 'seaworthiness' to recover full damages from shipowners regardless of fault; (2) employers of the longshoremen who, under another judicially created doctrine, could be required to indemnify shipowners and thereby lose the benefit of the intended exclusivity of the compensation remedy; and (3) workers who wanted to improve the benefit schedule deemed inadequate by all parties. Congress sought to meet these desires by 'specifically eliminating suits against vessels brought for injuries to longshoremen under the doctrine of seaworthiness and outlawing indemnification actions and "hold harmless" or indemnity agreements[; continuing] to allow suits against ves-

ers across the nation. See id., 272 ("Congress wanted a uniform compensation system to apply to employees who would otherwise be covered by [the longshore] [a]ct for part of their activity. . . . It wanted a system that did not depend on the fortuitous circumstance of whether the injury [to the longshoreman] occurred on land or over water." [Citation omitted; internal quotation marks omitted.]).

Several years later, in *Sun Ship, Inc.* v. *Pennsylvania*, 447 U.S. 715, 720–22, 100 S. Ct. 2432, 65 L. Ed. 2d 458 (1980), the Supreme Court held that the 1972 amendments did not preclude state compensation for land based injuries that fell within the longshore act. Concurrent jurisdiction thus was permitted for maritime injuries on both land and sea except in cases of exclusive federal jurisdiction beyond the "twilight zone" in which clearly maritime workers were injured over indisputably navigable waters. See 9 A. Larson & L. Larson, supra, § 145.07 [4], p. 145-143. In sum, Congress and the Supreme Court gradually extended federal jurisdiction across the shoreline and increased federal benefits over the course of sixty-five years to create a uniform body of law that overcame the inequities arising from the

sels or other third parties for negligence[; and raising] benefits to a level commensurate with present day salaries and with the needs of injured workers whose sole support will be payments under the Act.' " Id., 261–62. Thus, "the [longshore] [a]ct [is] not a simple remedial statute intended for the benefit of the workers. Rather, it was designed to strike a balance between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other. Employers relinquished their defenses to tort actions in exchange for *limited and predictable liability.* Employees accept the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail." (Emphasis added.) *Morrison-Knudsen Construction Co.* v. *Director, Office of Workers' Compensation Programs*, 461 U.S. 624, 635–36, 103 S. Ct. 2045, 76 L. Ed. 2d 194 (1983). Thus, in addition to increasing benefits and reducing uncertainty for maritime workers, the 1972 amendments promoted the equally important goal of predictability and uniformity in the law for employers.

multiplicity of state compensation laws and the disparities that had existed between federal benefits for maritime injuries incurred on navigable waters and state benefits for maritime injuries that occurred on land, without interfering with exclusive federal jurisdiction in appropriate cases.

## II

The rule adopted by the majority disrupts this scheme because its practical effect is to permit concurrent state and federal jurisdiction over *all* maritime injuries that occur on navigable waters, thus eliminating exclusive federal jurisdiction over *any* injury covered by the longshore act. The rule thus constitutes a major departure from United States Supreme Court precedent.

The majority's rule is based on its conclusion that "the United States Supreme Court, in its decisions in [*Bethlehem Steel Co.* v. *Moores*, 335 U.S. 874, 875, 69 S. Ct. 239, 93 L. Ed. 417 (1948) (per curiam),[3] aff'g *Moores's Case*, 323 Mass. 162, 80 N.E.2d 478 (1948), and *Baskin* v. *Industrial Accident Commission*, 338 U.S. 854, 70 S. Ct. 99, 94 L. Ed. 523 (1949) (per curiam), vacating 89 Cal. App. 2d 632, 201 P.2d 549 (1949)], clearly has signaled that it no longer will apply the *Jensen* rule to bar waterfront claims under a state's workers' compensation law in cases in which the claim previously would have been barred solely on the basis of the particular type of work that the employee was engaged in or his precise geographical location at the time of injury." Majority opinion, p. 31. Thus, according to the majority, *every* waterfront case involving facts pertaining to land and sea now falls within the "twilight zone." I do not agree that *Moores's Case* and *Baskin* are susceptible to such a broad interpretation.

---

[3] In the interest of simplicity, we refer to the United States Supreme Court's decision in *Bethlehem Steel Co.* v. *Moores*, supra, 335 U.S. 874, as *Moores's Case*.

In *Moores's Case* and *Baskin*, the Massachusetts Supreme Judicial Court and California District Court of Appeal respectively considered whether claims brought by workers seeking state compensation for injuries incurred while repairing ships fell within the "twilight zone." See *Baskin* v. *Industrial Accident Commission*, supra, 89 Cal. App. 2d 637–38; *Moores's Case*, supra, 323 Mass. 167–68. Almost two decades earlier, the Supreme Court had held in *John Baizley Iron Works* v. *Span*, supra, 281 U.S. 222, that, although the issue of whether work has a direct relation to navigation or commerce "must, of course, be determined in view of [the] surrounding circumstances as cases arise"; id., 230; "[r]epairing a completed ship lying in navigable waters has [a] direct and intimate connection with navigation and commerce . . . ." Id., 232.

In *John Baizley Iron Works*, the worker had been injured while painting angle irons and repairing the floor in the ship's engine room. Id., 228–29. In contrast, the worker in *Moores's Case*, also a ship repair case, was a "rigger" or "tag man" whose duties included assisting crane operators by directing the movement of material from piers on land to dry docks or ships but required only infrequent work on ships. (Internal quotation marks omitted.) *Moores's Case*, supra, 323 Mass. 164. Although he spent most of his time on the piers, the worker was injured when he slipped on board a ship undergoing repairs while moving to a location where the crane operator could see him better for the purpose of giving signals. Id. The Massachusetts Supreme Court noted that, although ship repair work had been considered a matter of exclusive federal jurisdiction since *John Baizley Iron Works*, the "twilight zone" established in *Davis* had changed the law by setting "up a means of escape from the difficulties involved in drawing the line between State and Federal authority under . . . *Jensen* . . . ." Id., 166. The Massachusetts court

explained: "[A]lthough apparently some heed must still be paid to the line between State and Federal authority as laid down in the cases following the *Jensen* case, the most important question has now become the fixing of the boundaries of the new 'twilight zone,' and for this the [*Davis*] case gives us no rule or test other than the indefinable and subjective test of doubt. . . . Probably therefore our proper course is not to attempt to reason the matter through and to reconcile previous authorities, or to preserve fine lines of distinction, but rather simply to recognize the futility of attempting to reason logically about 'illogic,' and to treat the *Davis* case as intended to be a revolutionary decision deemed necessary to escape an intolerable situation and as designed *to include within a wide circle of doubt all water front cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way*, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other." (Citation omitted; emphasis added.) Id., 167. The court concluded: "We are the more inclined to include within the 'twilight zone' the case of a workman engaged in an ordinary land occupation although occasionally going upon a dry dock or vessel to make repairs because in the latest case of that particular type decided in the Supreme Court of the United States, *John Baizley Iron Works* . . . although . . . held to be one exclusively of Federal cognizance, three of the justices dissented, and [Associate] Justice [Hugo L.] Black in his opinion in the *Davis* case refers to the [*John*] *Baizley Iron Works* case as if it were one of those responsible for the existing confusion." Id. In a per curiam decision, the United States Supreme Court, citing *Davis*, affirmed the Massachusetts decision upholding the state award of compensation. *Bethlehem Steel Co.* v. *Moores*, supra, 335 U.S. 875.

The following year, the California District Court of Appeal denied a worker's request for state compensation in another ship repair case, concluding that the case fell within exclusive federal jurisdiction. *Baskin* v. *Industrial Accident Commission*, supra, 89 Cal. App. 2d 637. The worker was a "materialman" whose duties were performed almost entirely on shore. Id., 632. Despite standing instructions that he not be sent aboard ships undergoing repairs, he was ordered on board a ship that was being repaired to assist in moving planks from one hold to another because the crane was unable to do so. Id., 633. While aboard the ship, he fell and suffered injuries. Id. The California court, citing *John Baizley Iron Works*, concluded that the case did not fall within the "twilight zone" because the repairs had a direct and intimate connection with navigation and commerce, and, therefore, application of state law would invade federal jurisdiction. Id., 637. On appeal, the United States Supreme Court vacated the decision and remanded the case for reconsideration in light of *Moores's Case* and *Davis*. *Baskin* v. *Industrial Accident Commission*, supra, 338 U.S. 854.

The Supreme Court's decisions in *Moores's Case* and *Baskin* represented a departure from *John Baizley Iron Works* because they indicated that the court now believed that injuries incurred in ship repair cases or cases involving facts relating to both land and sea did not always fall within exclusive federal jurisdiction, as the court had suggested previously. In neither case, however, did the state court nor the United States Supreme Court conclude that *all* ship repair cases necessarily fell within the "wide circle of doubt"; *Moores's Case*, supra, 323 Mass. 167; constituting the "twilight zone." The Massachusetts court simply stated that "[w]e are the *more inclined to include within the 'twilight zone' the case of a workman engaged in an ordinary land occupation* although occasionally going upon a

dry dock or vessel to make repairs"; (emphasis added) id.; thus suggesting that the court also believed that ship repair cases involving workers who ordinarily performed their duties on board ships would *not* fall within the "twilight zone."[4]

Moreover, in neither *Moores's Case* nor *Baskin* did the Supreme Court choose to issue an opinion presenting the kind of legal analysis and discussion that might have been expected had it wished to repudiate *John Baizley Iron Works* entirely in order to establish the principle that exclusive federal jurisdiction no longer should govern in *any* ship repair case. The most that can be said after *Moores's Case* and *Baskin* is that the court believed that *some* ship repair cases did not have a "direct and intimate" connection with navigation and commerce, and, consequently, courts could consider those cases as falling within the "twilight zone." Indeed, the Massachusetts court expressly acknowledged continued exclusive federal jurisdiction in cases involving maritime injuries in navigable waters when it stated that "some heed must still be paid to the line between State and Federal authority" and that the "twi-

---

[4] The majority states that the Massachusetts court's reference in the next sentence to the fact that the distinction between making repairs to a completed ship on navigable waters and performing similar work on a ship under construction on navigable waters is of "doubtful practical validity"; *Moores's Case*, supra, 323 Mass. 168; clearly indicates that, "even if the claimant's primary employment had been ship repair, his claim would have been treated [by the Massachusetts court] the same as if he had been engaged in shipbuilding, that is, as subject to state compensation law." Footnote 21 of the majority opinion. I disagree because such a conclusion is unsupported by the express words of the court. Not only did the Massachusetts court state that it was "more inclined" to include within the "twilight zone" cases involving workers engaged in "ordinary land occupation[s]"; *Moores's Case*, supra, 167; it also recognized that *Davis* did *not* overrule *Jensen*; id., 166; and stated that "some heed must still be paid to the line between State and Federal authority as laid down in the cases following the *Jensen* case . . . ." Id., 167. More importantly, however, it never suggested that *all* future ship repair cases in Massachusetts should be subject to concurrent state and federal jurisdiction. See id., 166–67.

light zone" included "all water front cases involving aspects pertaining both to the land and to the sea *where a reasonable argument can be made either way . . . ."* (Emphasis added.) Id. When the Supreme Court decided *Baskin* one year later, it again determined that the facts raised sufficient jurisdictional doubt to place that case within the "twilight zone." Significantly, in both *Moores's Case* and *Baskin,* the injured workers performed most of their duties on land and were not engaged in the same type of traditional ship repair work as the injured worker in *John Baizley Iron Works.*[5] In fact, the worker in *Baskin* had violated a standing order *not* to board ships when he went on board the ship to assist in moving planks. *Baskin* v. *Industrial Accident Commission,* supra, 89 Cal. App. 2d 633.

That the Supreme Court did not intend *Davis, Moores's Case* and *Baskin* to eliminate the *Jensen* line of demarcation is confirmed by the court's direct and indirect references in subsequent opinions to exclusive federal jurisdiction in waterfront cases. For example, in *Hahn* v. *Ross Island Sand & Gravel Co.,* 358 U.S. 272, 273, 79 S. Ct. 266, 3 L. Ed. 2d 292 (1959), in which the court reversed the decision of the Oregon Supreme Court dismissing an action by a worker seeking state compensation for an injury incurred on a barge dredging sand and gravel in navigable waters, the court declared in a per curiam decision that, "if the case were not within the 'twilight zone' . . . the [longshore] [a]ct would provide the *exclusive remedy.*"[6] (Emphasis

---

[5] Compare *Baskin* v. *Industrial Accident Commission,* supra, 89 Cal. App. 2d 632–33, and *Moores's Case,* supra, 323 Mass. 164, with *John Baizley Iron Works* v. *Span,* supra, 281 U.S. 230, 232.

[6] The majority grossly oversimplifies and misrepresents *Hahn* when it states that the case stands for the proposition that "states have jurisdiction over [claims involving] an injury incurred by an employee while on a boat in navigable waters" and that the court's reference to "exclusive federal jurisdiction is: (1) dict[um]; and (2) of no assistance in determining the contours of the twilight zone." Footnote 22 of the majority opinion. Properly understood, *Hahn* stands for the proposition that the longshore act does not prevent an injured worker from obtaining state compensation benefits

added.) In *Nacirema Operating Co.* v. *Johnson*, 396
U.S. 212, 90 S. Ct. 347, 24 L. Ed. 2d 371 (1969), the court
observed that its previous decisions "had permitted
state remedies in *narrow areas seaward* of [the *Jensen*]
line"; (emphasis added) id., 221; thus suggesting that a
broad category of injuries incurred over navigable
waters remained subject to exclusive federal jurisdic-
tion. Similarly, in *Sun Ship, Inc.* v. *Pennsylvania*, supra,
447 U.S. 715, the court made several references to the
continuing viability of exclusive federal jurisdiction.
The court first noted that, before 1972, "marine-related
injuries fell within one of three jurisdictional spheres as
they moved landward. At the furthest extreme, *Jensen*
commanded that nonlocal maritime injuries fall under
the [longshore act]. 'Maritime but local' injuries 'upon
the navigable waters of the United States' . . . could
be compensated under the [longshore act] or under
state law. And injuries suffered beyond navigable
waters—albeit within the range of federal admiralty
jurisdiction—were remediable only under state law."
(Citation omitted.) Id., 719. Thereafter, the court also
stated that "the pre-1972 [longshore act] ran concur-
rently with state remedies in the 'maritime but local'
zone"; id., 720; and that, in adopting the 1972 amend-
ments extending federal jurisdiction landward, Con-
gress had not expressed an intent to alter the "accepted
understanding that federal jurisdiction would coexist
with state compensation laws in that field in which the
latter *may constitutionally operate under the Jensen
doctrine.*" (Emphasis added.) Id., 722. The court thus
expressly recognized the existence of the *Jensen* doc-

---

in a "twilight zone" case. *Hahn* v. *Ross Island Sand & Gravel Co.*, supra,
358 U.S. 273; see also *Peter* v. *Hess Oil Virgin Islands Corp.*, 903 F.2d 935,
947 (3d Cir. 1990), cert. denied, 498 U.S. 1067, 111 S. Ct. 783, 112 L. Ed. 2d
846 (1991). Moreover, I do not cite *Hahn* for the purpose of determining
the "contours" of the "twilight zone" but simply to demonstrate that the
Supreme Court continued to recognize exclusive federal jurisdiction in cases
involving maritime injuries in the years following *Moores's Case* and *Baskin*.

trine more than thirty years after *Moores's Case* and *Baskin,* and said nothing to alter the impression that exclusive federal jurisdiction still governed in cases involving nonlocal maritime injuries.[7] Accordingly, although the Supreme Court has narrowed the doctrine of exclusive federal jurisdiction, it has not overruled *Jensen,* even in ship repair cases.

Other federal and state jurisdictions also have continued to recognize exclusive federal jurisdiction in ship repair cases decided after *Moores's Case* and *Baskin.* See, e.g., *Hughes* v. *Chitty,* 415 F.2d 1150, 1151, 1152 (5th Cir. 1969) (claim subject to exclusive federal jurisdiction when carpenter was injured while repairing ship); *Flowers* v. *Travelers Ins. Co.,* 258 F.2d 220, 221, 228 (5th Cir. 1958) (claim subject to exclusive federal jurisdiction when welder was injured while repairing ocean going tanker), cert. denied, 359 U.S. 920, 79 S. Ct. 591, 3 L. Ed. 2d 582 (1959); *Wellsville Terminals Co.* v. *Workmen's Compensation Appeal Board,* 534 Pa. 333, 335, 338–40, 632 A.2d 1305 (1993) (claim subject to exclusive federal jurisdiction when welder was injured while repairing barge); *Wixom* v. *Travelers Ins. Co.,*

---

[7] The majority minimizes the court's references to exclusive federal jurisdiction over nonlocal maritime injuries in *Sun Ship, Inc.,* when it claims that the court was not attempting "to define the current scope of 'nonlocal maritime injuries' under the [federal] constitution." Footnote 22 of the majority opinion. The majority misses the point that, in its most recent full-fledged opinion addressing concurrent state and federal jurisdiction over maritime injuries, the Supreme Court declined to question the "accepted understanding" in 1972 that state jurisdiction in compensation matters was subject to certain *constitutional limitations* under *Jensen. Sun Ship, Inc.* v. *Pennsylvania,* supra, 447 U.S. 722; see also *Director, Office of Workers' Compensation Programs* v. *Perini North River Associates,* supra, 459 U.S. 306 ("[b]eginning with [the court's] decision in *Southern Pacific Co.* v. *Jensen,* [supra, 244 U.S. 205, it was] held that there were certain circumstances in which States could not, consistently with Art. III, § 2, of the Constitution, provide compensation to injured maritime workers"). Furthermore, it is irrelevant that the Supreme Court has not preempted the application of state law from the field covered by exclusive federal jurisdiction in light of the fact that it has never been required to decide that question.

357 So. 2d 1343, 1344 (La. App. 1978) (claim subject to exclusive federal jurisdiction when ironworker was injured while repairing ship). Contra *Duong* v. *Workers' Compensation Appeals Board*, 169 Cal. App. 3d 980, 981, 984, 215 Cal. Rptr. 609 (1985) (claim subject to state jurisdiction when worker was injured while repairing ship); *Beverly* v. *Action Marine Services, Inc.*, 433 So. 2d 139, 140, 143 (La. 1983) (claim subject to state jurisdiction when worker died from inhalation of toxic fumes while repairing ship).

In the present case, the plaintiff was a stevedore whose duties included the loading and unloading of cargo from a ship and who fell because a step gave way while he was descending into the ship's hold. The work of a stevedore or longshoreman differs from that of a ship repair worker and has long been regarded as strictly maritime in nature. See *Northern Coal & Dock Co.* v. *Strand*, 278 U.S. 142, 144, 49 S. Ct. 88, 73 L. Ed. 232 (1928) (work of longshoreman or stevedore on vessel lying in navigable waters has direct relation to commerce and navigation and is clearly maritime); *Southern Pacific Co.* v. *Jensen*, supra, 244 U.S. 217 ("[t]he work of a stevedore . . . is maritime in its nature"); *Atlantic Transport Co.* v. *Imbrovek*, 234 U.S. 52, 61, 34 S. Ct. 733, 58 L. Ed. 1208 (1914) ("[w]e entertain no doubt that the service in loading and stowing a ship's cargo is [a maritime service]"). State and federal courts have not hesitated since *Moores's Case* and *Baskin* to conclude that injuries incurred on navigable waters while loading and unloading cargo are covered exclusively by federal law. See, e.g., *Noah* v. *Liberty Mutual Ins. Co.*, 267 F.2d 218, 218–19 (5th Cir. 1959); *Wells* v. *Industrial Commission*, 277 Ill. App. 3d 379, 380, 386, 660 N.E.2d 229 (1995); *Ellis* v. *Travelers Ins. Co.*, 241 La. 433, 435, 464–65, 129 So. 2d 729 (1961). In addition, the majority has cited no federal authority involving injury to a stevedore in support of its conclu-

sion that stevedores or longshore workers injured while performing their duties on navigable waters should be subject to concurrent state and federal jurisdiction.[8] I would therefore conclude that, because the Supreme Court has not overruled *Jensen* and still refers to the concept of exclusive federal jurisdiction in cases involving maritime injuries that occur on navigable waters, the state lacks jurisdiction to award the plaintiff benefits under the state workers' compensation laws.

The majority relies on *Lane* v. *Universal Stevedoring Co.*, supra, 63 N.J. 20, which quotes from a 1971 treatise on workers' compensation law by Arthur Larson, for the proposition that, after *Moores's Case* and *Baskin,* "[e]ither categories previously held federal are outside

---

[8] The only three cases involving stevedores cited by the majority are *Allsouth Stevedoring Co.* v. *Wilson,* 220 Ga. App. 205, 469 S.E.2d 348 (1996), cert. denied sub nom. *Strachan Shipping Co.* v. *Wilson,* No. S96C0936, 1996 Ga. LEXIS 570 (May 3, 1996), *Lane* v. *Universal Stevedoring Co.,* supra, 63 N.J. 20, and *Richard* v. *Lake Charles Stevedores,* 95 So. 2d 830 (La. App. 1957), cert. denied, 355 U.S. 952, 78 S. Ct. 535, 2 L. Ed. 2d 529 (1958). In *Allsouth Stevedoring Co.,* the Georgia Court of Appeals concluded that, in light of the split of authority among states that have dealt with the issue of exclusive federal jurisdiction in cases involving stevedores injured on navigable waters, the matter should be resolved on the basis of policy considerations. *Allsouth Stevedoring Co.* v. *Wilson,* supra, 209–10. The court then determined that concurrent state and federal jurisdiction was appropriate because to decide otherwise would create the untenable situation of a stevedore "walk[ing] in and out of state [jurisdiction] many times each day." Id., 210. The Georgia court reasoned that state coverage of employees for identical injuries suffered on land or sea would place "no new burdens on employers." Id. I reject this reasoning because it is unrelated to the criteria used by the Supreme Court for determining whether a case falls within the "twilight zone." I also note that *Allsouth Stevedoring Co.* is not a federal case.

In *Richard* v. *Lake Charles Stevedores,* supra, 95 So. 2d 832, in which the injured stevedore also was granted permission to recover under state compensation law, the United States Supreme Court denied the employer's petition for a writ of certiorari to appeal from the decision of the Louisiana appeals court, thus expressing no opinion on the matter. See, e.g., *Boumediene* v. *Bush,* 549 U.S. 1328, 127 S. Ct. 1478, 167 L. Ed. 2d 578 (2007) (Stevens and Kennedy, Js.) ("denial of certiorari does not constitute an expression of any opinion on the merits"). I further discuss *Lane* in the text of this opinion.

the twilight zone or they are not. Both ship repair and ship loading had equally been held federal. Once that line has been broken by a holding that a ship repair case can be treated as a twilight zone case, there is no further ground for distinguishing an unloading case." (Internal quotation marks omitted.) Id., 33, quoting 3 A. Larson, Workmen's Compensation Law (1971) § 89.40, p. 444 n.55. The foregoing quotation from Larson's 1971 treatise, however, was not included in the work's most recent edition. Larson instead writes in 2006 that, "even under the twilight zone doctrine there will be cases falling outside the twilight zone, as when the claimant is clearly a maritime worker and is injured over indisputably navigable waters."[9] 9 A. Larson & L.

---

[9] The majority characterizes this conclusion as an "inexplicable discrepancy" that is "unsupported by any analysis and . . . is entirely inconsistent with the analysis that Larson had performed"; footnote 17 of the majority opinion; in prior sections of the treatise, in which he states that "everything [the Supreme Court] had said [prior to 1972], or, more exactly, everything that it had done or omitted to do, placed it on the side of . . . not limiting state jurisdiction by pre-*Davis* tests." 9 A. Larson & L. Larson, supra, § 145.05 [3], p. 145-127. The majority, however, misconstrues Larson, who makes repeated references to the fact that the law was fraught with ambiguity prior to 1972. For example, Larson writes immediately before making the above quoted statement that the Supreme Court never had formally addressed the issue of whether state jurisdiction should be extended to injuries previously subject to exclusive federal jurisdiction, such as those arising in the course of loading and unloading ships or repairing completed vessels. Id. Larson further writes that, although there was "an impressive line of decisions" in favor of concurrent jurisdiction in such cases, there also was "substantial authority" in favor of exclusive federal jurisdiction. Id. Larson then speculates, in effect, that nothing in the Supreme Court's decisions prior to 1972 was *inconsistent* with the conclusion that exclusive federal jurisdiction over maritime injuries no longer existed. Id. He goes on to cite *Moores's Case* and *Baskin*, among others, to support his view that, prior to 1972, the Supreme Court had not precluded a state from applying its compensation law to a waterfront injury on *grounds related to the "local-concern doctrine"* in more than forty years. (Emphasis added.) Id., p. 145-129. Larson concedes that "[s]uch agonizing as was done over this problem in the last couple of generations was done, not by the United States Supreme Court, but by several state courts, and, within the federal system, chiefly by the Fifth Circuit. Louisiana, New Jersey, and Texas produced decisions facing *both ways*. So did the Fifth Circuit . . . ." (Emphasis added.) Id. In

## Larson, supra, § 145.07 [4], p. 145-143, citing, among

discussing *Calbeck*, Larson continues to acknowledge ambiguity in the law when he states that the Supreme Court's ruling "did not necessarily imply that a symmetrical result must follow" in cases in which exclusive federal jurisdiction is presumed. Id. Larson nevertheless writes that a "strong case could be made" for the proposition that the rationale of *Calbeck* cut in both directions. Id.

The treatise later discusses the development of the law *following* the enactment of the 1972 amendments. In response to the question of "[w]hat, if anything, did the 1972 amendments do to change the law as [it related] to the 'twilight zone' and concurrent jurisdiction doctrines," Larson declares, "legally, nothing." Id., § 145.07 [1], p. 145-138. Larson ultimately concludes that, even after 1972, certain cases would continue to fall outside the "twilight zone." Id., § 145.07 [3], p. 145-143. Viewed in its entirety, Larson's commentary thus recognizes that different jurisdictions had reached different conclusions about the continued viability of exclusive federal jurisdiction over maritime injuries incurred on navigable waters. He would interpret Supreme Court precedent such as *Moores's Case, Baskin* and *Calbeck*, however, as supporting the notion that concurrent federal and state jurisdiction exists over injuries formerly subject to exclusive federal jurisdiction, although he still believed that, under present law, some cases would continue to fall outside the "twilight zone." Larson's final conclusion is therefore not an "inexplicable discrepancy" that is inconsistent with his prior analysis but grows out of his express recognition of the unresolved controversy surrounding the issue since Congress enacted the 1972 amendments.

The majority also discredits Larson's conclusion regarding the limits of the "twilight zone" on the ground that one of the cases that Larson cites, namely, *Hernandez* v. *Mike Cruz Machine Shop*, 389 So. 2d 1251, 1252 (Fla. App. 1980), was governed by a state statute that precluded application of state compensation laws when an employee's injury was covered by the longshore act. The majority further notes that, although Larson also cites *Wixom* v. *Travelers Ins. Co.*, supra, 357 So. 2d 1344, in which there was no similar state statute and in which a Louisiana appeals court determined that the worker could not receive state benefits because his injury was subject to exclusive federal jurisdiction, *Wixom* has been questioned by the Louisiana Supreme Court. See *Logan* v. *Louisiana Dock Co.*, 541 So. 2d 182, 188 n.17 (La.) (*Wixom* "reflect[s] an anomalous and overly restrictive view of concurrent jurisdiction"), cert. dismissed, 492 U.S. 939, 110 S. Ct. 30, 106 L. Ed. 2d 639 (1989). Moreover, according to the majority, Larson implicitly has rejected the reasoning in *Wixom*. Whether Larson agrees with the reasoning in *Wixom*, however, has no bearing on his express conclusion that some cases continue to fall outside the "twilight zone." As for the fact that *Wixom* has been questioned, the point of view expressed in *Wixom* also was expressed in other cases cited in the treatise. See, e.g., A. Larson & L. Larson, supra, § 145.05D [3], p. D145-34 n.12 (digest to chapter 145), citing *Flowers* v. *Travelers Ins. Co.*, supra, 258 F.2d 220. Finally, the fact that *Hernandez*

other cases, *Wixom* v. *Travelers Ins. Co.*, supra, 357 So. 2d 1344 (claim in ship repair case subject to exclusive federal jurisdiction). Accordingly, it cannot be concluded, in light of recent developments in the law, that Larson now believes that the Supreme Court extended the "twilight zone" in *Moores's Case* and *Baskin* to eliminate exclusive federal jurisdiction in all ship repair and ship loading cases.

Moreover, the majority itself points out the paradox in *Lane* that, after concluding that the case was governed by *Moores's Case*, the New Jersey court distinguished the operative facts from the facts in *Jensen* on the ground that the injured worker in *Lane* had "very seldom" been required to work on board a ship; (internal quotation marks omitted) *Lane* v. *Universal Stevedoring Co.*, supra, 63 N.J. 33; thereby suggesting that the court may have believed that *Jensen* and other cases with similar facts would not fall within the "twilight zone."

Finally, I agree with the Fifth Circuit's statement in *Flowers* v. *Travelers Ins. Co.*, supra, 258 F.2d 220, that a federal court's "duty faithfully to interpret and apply Federal constitutional principles and . . . [the longshore act]" is too important for it "to be swayed by State Court decisions [it] think[s] are fundamentally erroneous in a field in which . . . the Federal Judiciary . . . has the last say." Id., 227. As a result, although I would not rule out the possibility that the facts in a

---

was governed by a state law precluding state compensation when coverage is afforded under the longshore act does not undermine Larson's conclusion as to exclusive federal jurisdiction because a law of this nature would cover such cases, among others. Insofar as *Lane* continues to govern in New Jersey, I simply note that other jurisdictions disagree with the analysis in *Lane*; see, e.g., *Flowers* v. *Travelers Ins. Co.*, supra, 258 F.2d 227–28; and the case has been cited only once in New Jersey and by one other jurisdiction during the thirty-four years since it was decided. See *Duong* v. *Workers' Compensation Appeals Board*, supra, 169 Cal. App. 3d 983–84; *Lister* v. *J.B. Eurell Co.*, 234 N.J. Super. 64, 77, 560 A.2d 89 (App. Div. 1989).

particular stevedoring case might create sufficient doubt to bring it within the "twilight zone," I do not agree with *Lane* and the majority in the present case that all future ship repairing and stevedoring cases can be expected to raise significant issues of doubt under *Davis*.

## III

I also disagree with the rule espoused by the majority because wholesale adoption of such an approach by other jurisdictions could potentially reverse much of the progress that the United States Supreme Court and Congress has made since *Jensen*. As I described in part I of this dissent, the Supreme Court originally permitted overlapping federal and state jurisdiction in *Calbeck* to remedy inequities in the benefits available to workers injured on navigable waters under the "maritime but local" doctrine. This had no effect on the uniformity and harmony of federal maritime law because the injuries in such cases were not directly related to navigation and commerce. The 1972 amendments encouraged uniformity and, therefore, predictability in the law for both employers and workers by limiting employer liability in exchange for an increase in federal benefits and their extension landward. The concept of concurrent jurisdiction that was endorsed in *Sun Ship, Inc.*, did not disrupt the uniformity and predictability achieved by the 1972 amendments because federal benefits generally exceeded state benefits. Expanding *state* jurisdiction *seaward* to cover all cases arising under the longshore act for the purpose of ensuring that workers will receive greater state compensation benefits, however, is not consistent with this pattern. Instead of fostering the harmony and uniformity achieved under federal law, such a rule would introduce variation into the compensation scheme with respect to maritime injuries traditionally subject to exclusive federal jurisdiction, depending on the state in which the injury

occurred, and thus would compromise the uniformity and predictability that was a primary motivation behind adoption of the 1972 amendments.[10]

In *Knickerbocker Ice Co.* v. *Stewart*, 253 U.S. 149, 163–64, 40 S. Ct. 438, 64 L. Ed. 834 (1920), the Supreme Court declared unconstitutional a sweeping law passed by Congress granting states the right to extend remedies to *any* maritime injury incurred on navigable waters. The court concluded that such a delegation of legislative power to the states would defeat the purpose of the constitution of preserving the harmony and uniformity of federal law. Id., 164. The court explained: "The Constitution itself adopted and established, as part of the laws of the United States, approved rules of the general maritime law and empowered Congress to legislate in respect of them and other matters within the admiralty and maritime jurisdiction. Moreover, it took from the States all power, by legislation or judicial decision, to contravene the essential purposes of, or to work material injury to, characteristic features of such law or to

---

[10] The majority's claim that perpetuating the concept of exclusive federal jurisdiction will not foster uniformity in the law because it will require the " 'handling [of] coverage questions on a case-by-case basis, with all the administrative burdensomeness and endless uncertainty that this entails,' " is without foundation. Footnote 22 of the majority opinion. Cases subject to exclusive federal jurisdiction, by definition, clearly fall within the federal sphere because of the nature of the worker's employment and the location of his injury on navigable waters. Retaining exclusive federal jurisdiction in such cases will ensure that ship owners who employ workers in different states are held liable under a single compensation scheme. The majority's rule, "under which all such injuries are treated the same"; id.; contains an inherent contradiction because treating such injuries "the same" does not refer to the substance of the law but to the fact that both state and federal law apply, which will lead to diversity, rather than foster uniformity, in maritime law. In addition, a system that permits concurrent jurisdiction for all injuries incurred on navigable waters is likely to increase the administrative burden on ship owners as well as their insurance costs because workers very likely will file dual claims under federal and state law, as in the present case. The majority's preoccupation with "practical concerns" does not appear to consider this potential problem. Footnote 9 of the majority opinion.

interfere with its proper harmony and uniformity in its international and interstate relations. To preserve adequate harmony and appropriate uniform rules relating to maritime matters and bring them within control of the Federal Government was the fundamental purpose; and to such definite end Congress was empowered to legislate within that sphere." Id., 160. "[I]f every State may freely declare the rights and liabilities incident to maritime employment, there will at once arise the confusion and uncertainty which framers of the Constitution both foresaw and undertook to prevent." Id., 166.

Almost all of the issues that motivated Congress and the Supreme Court to clarify *Jensen* over the past ninety years have been addressed. Uncertainty with respect to the source of coverage and inequities in the relief available to injured workers has been eliminated because federal law presently covers all maritime related injuries, regardless of whether they occur on land or sea. Moreover, federal law has achieved uniformity with respect to maritime injuries incurred on navigable waters, except in doubtful cases that fall within the "twilight zone." Lastly, exclusive federal jurisdiction has been preserved over indisputably maritime injuries that occur on navigable waters. Permitting state compensation laws to govern in *all* cases arising under the longshore act cannot help but introduce the type of uncertainty and variability into the compensation scheme that the Supreme Court and Congress have sought to overcome since *Jensen* because such laws may provide benefits in many cases that differ from those provided under federal law.

Ironically, the principal rationale that the majority advances to broaden concurrent jurisdiction is that it would eliminate "uncertainty and confusion about whether the choice of jurisdiction would be the correct one and the need for courts to maintain hairline distinctions that [seem] implausible on their face." Text

accompanying footnote 22 of the majority opinion. Although I agree that this was an appropriate justification for creating the "twilight zone," it has no relevance to cases involving clearly maritime injuries incurred on navigable waters because such cases, by definition, do *not* generate confusion and uncertainty as to the choice of jurisdiction. Accordingly, I believe that if the law is changed to permit concurrent state and federal jurisdiction in all cases arising under the longshore act, such a change should be implemented by the United States Supreme Court, which has not overruled *Jensen* or decided that stevedoring cases do not fall within exclusive federal jurisdiction.

Accordingly, I respectfully dissent.